No. 03-003

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 220

JODY STEWART,

        Plaintiff and Appellant,

    v.

COVILL AND BASHAM CONSTRUCTION, LLC,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                     In and For the County of Flathead, Cause No. DV 2002-126B,
                     Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        William L. Managhan, Anderson Law Office PLLC, Kalispell, Montana

        For Respondent:

        Ross D. Tillman, Boone Karlberg, P.C., Missoula, Montana

        Randall S. Ogle, Ogle and Worm, Kalispell, Montana

Submitted on Briefs:  May 8, 2003

Decided:  August 25, 2003

Filed:

_____
                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Jody Stewart (Stewart) appeals from the District Court's order enforcing the arbitration clause located in her contract with Respondent, Covill and Basham Construction, LLC (Covill and Basham).  We affirm.

¶2    The sole issue on appeal is: Did the District Court err in enforcing the arbitration clause by concluding that Covill and Basham had not impliedly waived the right to arbitrate?

Factual and Procedural Background

¶3    On October 1, 2000, Covill and Basham, a construction company, and Stewart entered into a construction agreement (Agreement).  The Agreement provides that Covill and Basham would build a residence and garage for Stewart in Kalispell, Montana.  The Agreement contains an arbitration provision, which provides as follows:

> M.  DISPUTE RESOLUTION AND ATTORNEY'S FEES
>
> Any controversy or claim arising out of or related to this Agreement involving an amount of *less* than $5,000 (or the maximum limit of the court) must be heard in the Small Claims Division of the Municipal Court in the county where the Contractor's office is located. Any controversy or claim arising out of or related to this Agreement which is over the dollar limit of the Small Claims Court must be settled by binding arbitration administered by the American Arbitration Association in accordance with the Construction Industry Arbitration Rules. Judgment upon the award may be entered in any Court having jurisdiction thereof. The prevailing party in any legal proceeding related to this Agreement shall be entitled to payment of reasonable attorney's fees, costs, and expenses.

¶4    Construction commenced on the home in October 2000.  Pursuant to the terms of the Agreement, Stewart's residence was to be entered in the 2001 Flathead Building Association Parade of Homes, a showcase for homebuilders and suppliers.   In exchange for placement

in the Parade of Homes, Stewart received discounts from Covill and Basham and certain suppliers. The Parade was scheduled for August 2001.

¶5      In late March 2001, Stewart ceased making payments to Covill and Basham. At that time, Covill and Basham notified Stewart that it was ceasing work on the residence and informed Stewart that if she did not secure funds to complete the project by April 9, 2001, the contract would be terminated. Stewart did not obtain financing. In a letter dated April 26, 2001, counsel for Covill and Basham proposed to Stewart's counsel that the parties attempt non-binding mediation prior to binding arbitration due to the time constraints imposed by the Parade of Homes. The letter expressly stated that if mediation was unsuccessful the parties would "go forward with contested binding arbitration as required by the Contract."

¶6      Mediation was held in May 2001; however, it proved unsuccessful in resolving the dispute. The following month, Covill and Basham filed a construction lien against Stewart in the amount of $60,823.40. Ultimately, the parties agreed upon an arbitrator; however, prior to arbitration, Stewart asserted claims regarding the quality of construction against Covill and Basham. These claims were submitted to Covill and Basham's insurer, and Ross Tillman, defense counsel, was retained to defend Covill and Basham against those claims. Shortly after his retention, Mr. Tillman communicated, orally and in writing, with Stewart's counsel, each time indicating Covill and Basham's intent to enforce the arbitration provision.

¶7 In March 2002, Stewart filed a Complaint in Flathead County District Court alleging breach of contract and slander of title against Covill and Basham arising out of the defective construction of Stewart's home. In response, Covill and Basham filed a motion to compel arbitration. The District Court stayed the proceeding and, after holding a hearing on the matter, granted the motion to compel arbitration. Stewart then filed the present appeal.

Discussion

¶8 We review *de novo* a trial court's decision as to whether an arbitration clause has been waived. *Holm-Sutherland Co., Inc. v. Town of Shelby*, 1999 MT 150, ¶ 18, 295 Mont. 65, ¶ 18, 982 P.2d 1053, ¶ 18; *Downey v. Christensen* (1992), 251 Mont. 386, 389, 825 P.2d 557, 559. Waiver may be established by express declarations or acts or may be implied by a course of action or conduct which induces the belief that the intention and purpose was waiver. *Thiel v. Johnson* (1985), 219 Mont. 271, 274-75, 711 P.2d 829, 832. "When parties have contracted to settle disputes through arbitration, the party asserting waiver bears a heavy burden of proof." *Downey,* 251 Mont. at 389, 825 P.2d at 559. The party asserting waiver of an arbitration right must demonstrate: (1) knowledge of the existing right to compel arbitration;

(2) acts inconsistent with the right to arbitrate the dispute; and (3) prejudice to the party resisting arbitration. *Firestone v. Oasis Telecommunications*, 2001 MT 297, ¶ 18, 307 Mont. 469, ¶ 18, 38 P.3d 796, ¶ 18; *Downey*, 251 Mont. at 389, 825 P.2d at 559. Usually, an express waiver of the right to demand arbitration occurs orally or in writing. In the case at bar, Stewart does not argue that Covill and Basham expressly waived its right to arbitration.

4

Therefore, this Court must determine whether Covill and Basham's actions constitute an implied waiver under the three *Downey* factors.

¶9 The parties agree that Covill and Basham did have knowledge of its right to compel arbitration; however, the parties disagree as to whether Covill and Basham impliedly waived its right to compel arbitration by engaging in acts inconsistent with that right thereby causing prejudice to Stewart. For example, Stewart argues that, instead of initiating arbitration, Covill and Basham entered into mediation, filed a construction lien against Stewart, and waited 12 months before asserting arbitration. Stewart claims that the filing of the lien caused her substantial prejudice because it effectively prevented Stewart from obtaining financing to hire another contractor to complete the residence.

¶10 Covill and Basham responds that at no time did it express to Stewart's counsel an intention to waive its contractual right to arbitration. It further maintains that its proposal of mediation was offered in the hopes that the dispute would be resolved in time for the home to participate in the Parade of Homes. According to Covill and Basham, at all times it was clear to Stewart that if mediation was unsuccessful, Covill and Basham would enforce the arbitration clause. Covill and Basham also maintain that once mediation proved unsuccessful, it had no choice but to file a construction lien against the property or otherwise jeopardize its statutorily created security interest in the property.

¶11 This Court has considered the type of conduct that would constitute an implied waiver of the right to arbitrate on a number of occasions. For example in *Downey*, a franchisee sued a franchisor and a franchisor employee for breach of contract. Although the franchisor

5

asserted its right to arbitrate as an affirmative defense in its "Answer to the Complaint," both parties subsequently conducted discovery and one defendant filed a counterclaim against the plaintiff for breach of contract. The franchisor then filed a motion to compel arbitration, which the District Court denied based on its holding that the defendants had waived the right to arbitrate by participating in discovery and filing a counterclaim. We reversed the District Court, ruling that the above-mentioned acts were insufficient to constitute an implied waiver. This Court concluded that the defendants had not acted inconsistently with their right to arbitrate or that any inconsistent actions were not prejudicial, and ordered that all arbitrable claims be submitted to arbitration.

¶12    In contrast, in *Holm-Sutherland* we held that a contracting company seeking to compel arbitration had effectively waived its right through inconsistent acts. In that case, a dispute arose under a construction contract containing an arbitration clause. Just as the franchisor in *Downey*, the company listed the right to arbitrate as an affirmative defense; however, it subsequently failed to press for arbitration. Instead, the company demanded a jury trial, filed a separate action arising out of the same contract without raising the arbitration issue, engaged in litigation for an extended period of time, and waited to file its motion to compel arbitration until only a few weeks before trial. *See Holm-Sutherland.* We ultimately ruled that the company's subsequent actions were inconsistent with its initial assertion of the right to demand arbitration and that the company, through its actions, had elected to pursue a judicial remedy through the Montana court system. *Holm-Sutherland*, ¶ 31.

¶13     The facts presently before us are more akin to those present in *Downey* than those in *Holm-Sutherland*.   Although the parties did engage in  an unsuccessful mediation attempt, Covill and Basham's counsel's letter proposing mediation was clear that if mediation failed, Covill and Basham would enforce the arbitration provision of the Agreement.  Additionally, Covill and Basham's filing of a construction lien was not to advance litigation, but rather to protect its statutorily created security interest in the property.  Any prejudice to Stewart resulting from the filing of the lien would have occurred whether the parties had arbitrated or litigated.   Like *Downey*, we find that Covill and Basham did not engage in acts inconsistent with its initial or subsequent assertions of its right to arbitrate.  Accordingly, the District Court correctly determined that Covill and Basham did not waive its right to arbitrate.  Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ JAMES C. NELSON

7

Justice Jim Regnier dissenting.

¶14     Boilerplate arbitration provisions present unique dilemmas, in part, based on the potentially oppressive outcomes.  As such, I believe application of these provisions should be closely scrutinized and reviewed, generally, with disfavor.  *See Kloss v. Edward D. Jones & Co.*, 2002 MT 129, ¶ 50, 310 Mont. 123, ¶ 50, 54 P.3d 1, ¶ 50 ("Where parties are not of equivalent sophistication and bargaining power and where the agreement and the arbitration clause have not been negotiated for at arm's-length, then it is appropriate–indeed, imperative–that courts closely scrutinize any process and any contract which results in one party forfeiting basic constitutional guarantees to the advantage of the other party.").

¶15     I understand that our case law imposes a heavy burden upon the party who attempts to establish waiver of an arbitration provision.  However, I think Stewart carried that burden.  In my estimation, an individual who files a construction lien has attempted to avail him or herself of the legal process.  This, in my view, is inconsistent with the right to arbitrate the dispute.  Further, the purported lien has a dramatic prejudicial effect on the owner of the property.  As in this case, construction liens presumably act as an impediment to additional financing.  For these reasons, I respectfully dissent.  I would hold that, through its actions, Covill and Basham impliedly waived its right to compel arbitration.

/S/ JIM REGNIER