987 So.2d 561 (2007)
PARAGON LIMITED, INC.
v.
Emily BOLES.
1061255.
Supreme Court of Alabama.
December 21, 2007.
*562 Ellen H. Dover of Marks & Weinberg, P.C., Birmingham, for appellant.
John M. Aaron, Alabaster, for appellee.
STUART, Justice.
Paragon Limited, Inc. ("Paragon"), appeals from an order of the trial court holding that Paragon waived its right to compel Emily Boles to submit her claims against it to arbitration. We reverse and remand.

Facts and Procedural History
On April 15, 2005, Boles and Paragon entered into a contract pursuant to which Paragon was to construct a residence for Boles. On August 22, 2006, Boles sued Paragon, claiming that it had breached the construction contract because Paragon failed to complete the construction of the house and had allegedly overcharged Boles for the work it had completed. On October 23, 2006, Paragon filed an answer to Boles's complaint. The answer denied Boles's claims, asserted various defenses, asserted various counterclaims against Boles, and asserted a third-party claim against Compass Bank, who is not a party to this appeal. One of the counterclaims sought to enforce a lien that Paragon had filed on August 25, 2006, against the property that was the subject of the construction contract. The answer also asserted that the construction contract contained a valid and enforceable arbitration clause, which required that any dispute related to the contract be settled by arbitration. Contemporaneously with filing its answer, Paragon filed a "motion to compel arbitration or, alternatively, to stay action pending arbitration," which further detailed Paragon's claim that Boles must submit her claims against it to arbitration. Boles filed a motion in opposition to arbitration.
On January 9, 2007, the trial court conducted a hearing on the motion to compel arbitration and at the end of the hearing requested that each party submit a proposed order to the court. On February 21, 2007, the trial court entered the order submitted by Boles, holding that Paragon had waived its right to arbitration because it filed the lien against the property. Specifically, the trial court held:
"Pending before this Court is Defendant['s], Paragon Limited, Inc., Motion to Stay Proceedings. A hearing was held on the 9th day of January, 2007, on this matter and all parties [were] present. This Court has reviewed the motion, responses, and the evidentiary submissions of the parties. Upon consideration *563 of the pleadings and evidentiary submission the Court concludes that [Paragon]'s Motion to Stay Proceedings is due to be denied.
"The Court determined that [Boles] and [Paragon] had a contract and in that contract there was an Arbitration Clause. The subject of the contract was the construction of [Boles]'s home by [Paragon].
"[Paragon] has waived its right to arbitration under the Federal Arbitration Act, 9 U.S.C.S. §§ 1-16 by failing to submit its claims to arbitration and substantially invoking the litigation machinery prior to demanding arbitration. [Paragon] used the litigation process to its benefit and to the disadvantage of the Plaintiff, Emily Boles, and the third party Defendant, Compass Bank.
"On or about August 25, 2006, [Paragon] filed a lien in the Probate Court of Tallapoosa County against [Boles]'s property for work performed on [Boles]'s house. The work that is the subject of the lien is that which is contemplated by the contract. A lien is a creation of a statute not a contract. The lien is a creation of law, and not of contract; and the law, and not the contract, determines the character, extent, and [possibility] of enforcement. Crawford v. Sterling, 155 Ala. 511, 46 So. 849 (Ala.1908). A materialman's or mechanic's lien created by this section loses all force and vitality unless suit is brought and prosecuted to final judgment. United States v. Costas, 273 Ala. 445, 142 So.2d 699 (Ala.1962). [Paragon] has benefitted from the filing of the lien, by protecting its claim against [Boles], and making [its] claim a priority over the mortgage of the third party Defendant, Compass Bank. [Boles] has been damaged by the filing of the lien because it has clouded her title in the property.
"[Paragon] never submitted its claims to be arbitrated, nor notified [Boles] that it was submitting its claims to arbitration. It did not raise the issue of arbitration until it was sued by [Boles] for breach of contract and breach of warranty. [Paragon] has filed an answer and counterclaim against [Boles]. [Paragon]'s counterclaims against [Boles] are contrary to the terms of the contract, asking for compensation for work performed above and beyond that which was agreed to in the contract and the change orders. Ex parte Prendergast, 678 So.2d 778 (Ala.1996).
"[Paragon]'s motion is due to be denied because it substantially invoked the litigation machinery and benefitted from it. [Paragon]'s actions disadvantaged [Boles] and the third party Defendant at the same time it benefitted [Paragon]. [Paragon] has never submitted its own claims to arbitration."
On March 22, 2007, Paragon filed a motion to alter, amend, or vacate the order, which the trial court denied on May 9, 2007. On May 23, 2007, Paragon appealed.

Standard of Review
"We review the trial court's grant or denial of a motion to compel arbitration de novo." Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1052 (Ala. 2007).

Issues and Analysis
The trial court and both parties appear to agree that the construction contract contains a valid arbitration clause and that that clause encompasses any claim related to the contract, including the claims brought by Boles in the present case. The trial court explicitly held that Paragon and Boles "had a contract and in that contract there was an [a]rbitration [c]lause." However, the trial court held that Paragon had waived its right to enforce the arbitration *564 clause because it "substantially invok[ed] the litigation machinery prior to demanding arbitration" and "used the litigation process to its benefit and to the disadvantage of [Boles]." This holding was based solely on the fact that Paragon had filed a lien against the property that was the subject of the contract.
On appeal, Paragon disputes the trial court's holding and alleges that it did not waive its right to arbitration. In her response brief, Boles does not respond to Paragon's argument. Instead, Boles raises a new argument. Boles alleges that Paragon cannot maintain an action to enforce any provision of the construction contract because, in a separate administrative proceeding, Paragon entered into a consent agreement with the Alabama Home Builders Licensure Board in which Paragon admitted that it had undertaken to construct Boles's residence without holding a required license and, thus, under § 34-14A-14, Ala.Code 1975, Paragon cannot maintain any action to enforce the provisions of the residential-home-building contract.[1]

I.
First, this Court must decide whether the trial court erred when it held that Paragon had waived its right to arbitration by filing a lien against the property.
"It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897, 899 (Ala.1995). Thus, "[i]n order to demonstrate that the right to arbitrate a dispute has been waived, the party opposing arbitration must demonstrate both (1) that the party seeking arbitration substantially invoked the litigation process, and (2) that the party opposing arbitration would be substantially prejudiced by an order requiring it to submit to arbitration." SouthTrust Bank v. Bowen, 959 So.2d 624, 633 (Ala.2006). Furthermore, "[o]ur cases continue to make it clear that, because of the strong federal policy favoring arbitration, a waiver of the right to compel arbitration will not be lightly inferred, and, therefore, that one seeking to prove waiver has a heavy burden." Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160, 1164 (Ala.1998).
Paragon argues that it did not substantially invoke the litigation process by filing a lien against the property and that Boles has not carried her heavy burden of showing that, because the lien was filed, she would be substantially prejudiced by an order requiring her to submit her claims to arbitration. This Court has never specifically decided whether filing a lien constitutes a substantial invocation of the litigation *565 process for purposes of a motion to compel arbitration, or whether a party opposing arbitration would be substantially prejudiced if she is required to submit to arbitration after the other party files a lien against the property that is the subject of the contract containing the arbitration clause. However, this Court has suggested, albeit in dicta, that filing an answer and a cross-claim for a mechanic's lien, while simultaneously filing a motion to compel arbitration, does not substantially prejudice the party opposing arbitration. Eastern Dredging & Constr., Inc. v. Parliament House, L.L.C., 698 So.2d 102, 104 (Ala.1997). But cf. Ex parte Prendergast, 678 So.2d 778 (Ala.1996) (deciding that a home builder had waived its right to arbitrate homeowners' warranty claims by doing all the following: filing a lien on the property, initiating foreclosure proceedings, filing an answer and counterclaim to the homeowners' claims, and demanding arbitration only after the builder had already received, through the litigation process, the amount the builder had claimed from the homeowners). This Court has explicitly held that mere invocation of the litigation process, alone, does not substantially prejudice the party opposing arbitration.[2] Generally, this Court has found that a party demanding arbitration waived its right to compel arbitration only if the party took an unjustifiable amount of time in demanding arbitration or if the party opposing arbitration has incurred substantial expenses by participating in the litigation.[3]
In the present case, Paragon did not take an unjustifiable amount of time in demanding arbitration, and there is no evidence indicating that Boles incurred substantial expenses by participating in the litigation before Paragon demanded arbitration. *566 Paragon filed its motion to compel arbitration contemporaneously with its answer only two months after the complaint was filed. Apparently nothing happened during that two months other than Paragon's filing of the lien, which occurred three days after the complaint was filed. The short period between the filing of the complaint and the demand for arbitration, coupled with the lack of any action by Boles during the period, makes this case more analogous to those cases in which this Court has upheld the right to arbitrate than to the cases in which this Court has found a waiver of the right to compel arbitration. Other than filing the lien, Paragon did no more than answer the complaint and make a demand for arbitration. Therefore, Paragon did not waive its right to arbitrate unless the mere filing of the lien manifested an intention to abandon the right to arbitrate in favor of the judicial process and the filing of the lien would substantially prejudice Boles if a subsequent order required her to submit her claims to arbitration.
Other jurisdictions have directly addressed the specific issue now before this Court and have held that filing a lien does not constitute a waiver of the right to enforce an agreement to arbitrate. Stewart v. Covill & Basham Constr., LLC, 317 Mont. at 153, 75 P.3d 1276 (2003); Homestead Savings & Loan Ass'n v. Superior Court in & for Marin County, 195 Cal. App.2d 697, 16 Cal.Rptr. 121 (1961). In Stewart, the Supreme Court of Montana reasoned that filing a lien does not constitute a waiver of the right to arbitrate because the "filing of a construction lien was not to advance litigation, but rather to protect [the contractor's] statutorily created security interest in the property. Any prejudice to [the homeowner] resulting from the filing of the lien would have occurred whether the parties had arbitrated or litigated." Stewart, 317 Mont. at 158, 75 P.3d at 1279. Similarly, in Homestead Savings & Loan Ass'n, the California District Court of Appeal reasoned as follows:
"The time in which to file for record a mechanic's lien is relatively short. It requires no action by the opposing party. It does preserve the status quo of the property. Under section 1200 of the Code of Civil Procedure the real party in interest had a right to file a separate action to obtain a personal judgment against the person personally liable for such debt, notwithstanding his lien. In view of these circumstances, the filing of a claim of lien is not inconsistent with, or a repudiation of, arbitration of the personal liability under the contract, and is not a waiver of it."
195 Cal.App.2d at 701, 16 Cal.Rptr. at 122.
In the present case, the only way Paragon could protect any interest it had in the property against a third-party claim was by filing a lien. Paragon was required to file the lien within a relatively short period after the last item of work was performed. See § 35-11-215, Ala.Code 1975 (providing that the lien must be filed within six months); see also § 35-11-221, Ala.Code 1975 (providing that "[a]ny action for the enforcement of the lien declared in this division must be commenced within six months after the maturity of the entire indebtedness secured thereby"). Filing the lien merely protected Paragon's rights to the property. Filing the lien did not substantially invoke any litigation concerning the construction contract. Furthermore, filing the lien did not put Boles in a position where she would be substantially prejudiced by a subsequent order requiring her to submit to arbitration. Filing the lien did not require any action by Boles, and it did not require her to incur any expense. Indeed, Boles has not shown where she took any action based on Paragon's *567 filing of the lien that would now negatively impact her position if the case is submitted to arbitration; thus, she has not carried her "heavy burden" of showing "substantial prejudice."
The only portion of the trial court's order that specifically states any negative impact on Boles is the following statement: "[Boles] has been damaged by the filing of the lien because it has clouded her title in the property." It is unclear how a cloud on Boles's title would "substantially prejudice" her if she is required to submit her claims to arbitration. In fact, the trial court never mentions "substantial prejudice" in its order. The trial court held only that Boles was "damaged" or "disadvantaged" by the filing of the lien. Again, "[i]n order to demonstrate that the right to arbitrate a dispute has been waived, the party opposing arbitration must demonstrate... that the party opposing arbitration would be substantially prejudiced by an order requiring it to submit to arbitration." SouthTrust Bank, 959 So.2d at 633 (some emphasis original; some emphasis added). Thus, Boles cannot show that Paragon waived its right to arbitrate without showing that she would be substantially prejudiced if she were required to submit her claims to arbitration. Nothing in the trial court's order indicates such substantial prejudice; Boles has not claimed in her brief to this Court that she would be substantially prejudiced; and a review of the record does not indicate that Boles would be substantially prejudiced by an order requiring her to submit her claims to arbitration. Therefore, Paragon did not waive its right to enforce the arbitration clause based on the mere fact that Paragon filed a lien against the property that was the subject of the contract containing the arbitration clause.

II.
Next, Boles raises an issue that was presented to the trial court but that the trial court did not address in its order. Boles alleges that, under § 34-14A-14, Ala.Code 1975, Paragon cannot maintain an action to enforce any provision of the contract, including the arbitration clause, because, in a separate administrative proceeding, Paragon entered into a consent agreement with the Alabama Home Builders Licensure Board in which Paragon admitted that it had engaged in the construction of Boles's residence without holding a required license. This claim is without merit.
In addition to possible collateral estoppel problems, Boles's allegation clearly attacks Paragon's ability to enforce the contract as a whole and does not specifically attack the arbitration clause within the contract. It is well established that challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court. In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the United States Supreme Court held:
"Prima Paint [Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967),] and Southland [Corp. v. Keating, 465 U.S. 1 (1984),] answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. *568 Applying them to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court."
546 U.S. at 445-46, 126 S.Ct. 1204.
Boles attempts to avoid this precedent by alleging that there is a distinction between void and voidable contracts when deciding whether to apply the holding of Buckeye Check Cashing. However, in that case, the United States Supreme Court made clear that such a distinction is irrelevant, stating:
"In declining to apply Prima Paint's rule of severability, the Florida Supreme Court relied on the distinction between void and voidable contracts. `Florida public policy and contract law,' it concluded, permit `no severable, or salvageable, parts of a contract found illegal and void under Florida law.' [Cardegna v. Buckeye Check Cashing, Inc., 894 So.2d 860, 864 (Fla.2005)]. Prima Paint makes this conclusion irrelevant. That case rejected application of state severability rules to the arbitration agreement without discussing whether the challenge at issue would have rendered the contract void or voidable. See 388 U.S., at 400-404. Indeed, the opinion expressly disclaimed any need to decide what state-law remedy was available, id., at 400, n. 3 (though Justice Black's dissent asserted that state law rendered the contract void, id., at 407). Likewise in Southland, which arose in state court, we did not ask whether the several challenges made there  fraud, misrepresentation, breach of contract, breach of fiduciary duty, and violation of the California Franchise Investment Law  would render the contract void or voidable. We simply rejected the proposition that the enforceability of the arbitration agreement turned on the state legislature's judgment concerning the forum for enforcement of the state-law cause of action. See 465 U.S., at 10. So also here, we cannot accept the Florida Supreme Court's conclusion that enforceability of the arbitration agreement should turn on `Florida public policy and contract law,' 894 So.2d, at 864."
Buckeye Check Cashing, 546 U.S. at 446, 126 S.Ct. 1204; see also Rintin Corp., S.A. v. Domar, Ltd., 476 F.3d 1254, 1259 (11th Cir.2007) (recognizing that the distinction between void and voidable contracts was deemed irrelevant by the Supreme Court in Buckeye Check Cashing); Community State Bank v. Strong, 485 F.3d 597, 622 (11th Cir.2007) (Marcus, J., concurring specially) (explaining that "an arbitration provision is severable from the remainder of the contract containing it and separately enforceable even if the remainder of the contract is later found by an arbitrator to be void.... Thus, even a party's claim that a usurious finance charge renders the contract as a whole void ab initio is for the arbitrator, not the court, to decide, and is no defense to a motion to compel arbitration.").
Therefore, the arbitration clause in the contract between Paragon and Boles is enforceable, and it is irrelevant whether Paragon's actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.

Conclusion
Paragon did not waive its right to enforce the arbitration clause merely by filing a lien against the property that was the subject of the contract containing the arbitration clause, by answering Boles's complaint, and by contemporaneously filing a motion to compel arbitration. Also, the arbitration clause is enforceable even if *569 the contract as a whole is later found to be void. Therefore, the judgment of the trial court is reversed, and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS and BOLIN, JJ., concur.
MURDOCK, J., concurs specially.
MURDOCK, Justice (concurring specially).
I concur in the main opinion. In so doing, I take particular note of the holding of the Montana Supreme Court in Stewart v. Covill & Basham Construction, LLC, 317 Mont. 153, 75 P.3d 1276 (2003), as quoted in the main opinion: "`Any prejudice to [the homeowner] resulting from the filing of the lien would have occurred whether the parties had arbitrated or litigated.'" 987 So.2d at 566 (quoting Stewart, 317 Mont. at 158, 75 P.3d at 1279). In this regard, I find the lien at issue in the present case to be analogous to the eviction action at issue in CitiFinancial Corp., L.L.C. v. Peoples, 973 So.2d 332 (Ala.2007). As I noted in my special writing in Peoples, in order to give effect to a mortgagee's right of possession in property, i.e., to forcibly remove the mortgagor from the property, "it [was] necessary in any event for the mortgagee to invoke the assistance of the courts." 973 So.2d at 341 (Murdock, J., concurring in the result). Likewise, in the present case, regardless of whether the rights of Paragon ultimately are decided by arbitration or litigation, in order to secure Paragon's position in the subject property against third parties "it is necessary in any event for [Paragon] to invoke the assistance of the [probate] court[]." Paragon's invoking the assistance of the probate court, therefore, cannot logically be treated as an abandonment of the arbitration process.
NOTES
[1] Section 34-14A-14, Ala.Code 1975, provides, in part, as follows: "A residential home builder, who does not have the license required, shall not bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into in violation of this chapter."
[2] See, e.g., Zedot Constr., Inc. v. Red Sullivan's Conditioned Air Servs., Inc., 947 So.2d 396, 399 (Ala.2006) (holding that filing an answer and a motion to dismiss did not constitute a waiver of the right to compel arbitration); Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1028 (Ala.2000) (holding that a party's failure to seek arbitration in an initial pleading is not sufficient, by itself, for a court to conclude the party waived its right to compel arbitration); Thompson v. Skipper Real Estate Co., 729 So.2d 287, 292 (Ala. 1999) (plurality opinion) (stating that "[m]erely moving to transfer an action to the proper venue and propounding one set of interrogatories with that motion is not such substantial involvement in the litigation process as to constitute a waiver of the right to compel arbitration"); and Ex parte Rager, 712 So.2d 333, 336 (Ala. 1998) (holding that a party had not waived its right to arbitration when it moved to compel arbitration four months after receiving complaint and after it had conducted limited discovery).
[3] See, e.g., Big Valley Home Ctr., Inc. v. Mullican, 774 So.2d 558, 562 (Ala.2000) (holding that the defendant waived its right to compel arbitration when it failed to assert its contractual right to compel arbitration until the eve of trial, which was over two years after the plaintiff filed her claims, and during this period the defendant answered the complaint, deposed the plaintiff, and made a settlement offer to the plaintiff); Morrison Rests., Inc. v. Homestead Village of Fairhope, Ltd., 710 So.2d 905, 907 (Ala. 1998) (holding that a party waived its right to arbitration when it did not assert the right for eight months and then only after it had received an adverse ruling on a summary-judgment motion); Ex parte Hood, 712 So.2d 341, 343 (Ala.1998) (holding that the defendant substantially invoked the litigation process when it responded to the complaint before asking that the arbitration clause be enforced, removed the case to federal court, and filed a case-scheduling-meeting report pursuant to Rule 26(f), Fed.R.Civ.P.); and Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997) (holding that the defendant waived its right to arbitration when it waited more than two years after receiving the complaint to file its motion to compel arbitration, which was more than eight months after the other defendants in the case had moved to compel arbitration, and the defendant chose to proceed to trial rather than file an interlocutory appeal when the trial court denied the defendant's motion).