PARKER, Justice
(dissenting).
Because I am dissenting from a no-opinion affirmance, a brief recitation of the facts is necessary to summarize Debra Johnson’s action against the Jefferson County Racing Association, Inc., d/b/a the Birmingham Race Course (“JCRA”). This is not the first time this action has come before this Court. In Johnson v. Jefferson County Racing Ass’n, Inc., 1 So.3d 960 (Ala.2008) (“Johnson I”), this Court set forth the facts and procedural history of this action, as follows:
“Johnson brought the present action following this Court’s decision in Barber v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599, 604 (Ala.2006), in which we determined that an activity advertised as ‘Quincy’s MegaSweeps’ (‘the MegaSweeps’) initiated by Innovative Sweepstakes Systems, Inc., at the Birmingham Race Course ‘involve[d] the use of slot machines,’ a gambling device that is illegal in Alabama. Johnson sued JCRA pursuant to § 8-l-150(a), Ala. Code 1975,[2] on her own behalf and on behalf of a class of similarly situated persons, seeking to recover money that she, and others, had paid to participate in the MegaSweeps.
“JCRA moved the trial court to compel Johnson to arbitrate her claims and to dismiss Johnson’s action. JCRA argued that by participating in the Mega-Sweeps, Johnson had assented to the arbitration provision found in the ‘official rules’ for the MegaSweeps (‘the Me-gaSweeps contract’).[3]- Johnson opposed JCRA’s motion, arguing that JCRA could not establish a valid, contract calling for arbitration. Specifically, Johnson argued that the MegaSweeps contract amounted to a contract founded on a gambling consideration and that, therefore, the contract is void and unenforceable under § 8-l-150(a), Ala.Code 1975. Johnson alternatively argued that, even if the MegaSweeps contract is not void in its entirety, because one of the MegaSweeps rules includes a void-where-prohibited-by-law provision, the arbitration clause found in those rules is void and unenforceable.
“The trial court noted that ‘the crux of [Johnson]’s complaint is that the agreement as a whole, including the arbitration provision, was rendered void or invalid by the Court’s holding in Barber v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala.2006) ].’ Relying on the United States Supreme Court’s decision in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the trial court then determined that because Johnson’s challenge was to the MegaSweeps contract as a whole, rather than the arbitration clause specifically, the issue of the validity of the contract was to be decided by the arbitrator. The trial court then dismissed Johnson’s action and ordered that she arbitrate her claims.
“Johnson moved the trial court to alter, amend, or vacate its order under Rule 59(e), Ala. R. Civ. P. In her motion, Johnson reasserted and clarified the arguments she had made in her brief opposing JCRA’s motion to compel arbitration, but. she also argued that the trial court should have stayed the action pending arbitration instead of dismissing it. The trial court denied her motion. *35 Johnson now appeals, arguing that neither the MegaSweeps contract nor the arbitration clause itself is valid or enforceable. Alternatively, Johnson argues that, even if we conclude that the arbitration clause is valid and enforceable, the trial court should have stayed, rather than dismissed, her action pending the outcome of arbitration.
Johnson I, 1 So.3d at 961-63 (footnote omitted). This Court in Johnson I determined that the MegaSweeps contract contained a valid and enforceable arbitration agreement, regardless of the invalidity of the MegaSweeps contract as a whole. Relying upon the following analysis, this Court determined that the arbitration agreement was severable from the remainder of the invalid MegaSweeps contract: *36 gaSweeps contracts relied on by the JCRA are void ab initio.’ Johnson’s brief at 15 (emphasis in the original).
*35 “Johnson argues that JCRA cannot meet its initial burden of demonstrating the existence of a contract calling for arbitration because, she argues, ‘under this Court’s unanimous decision in Barber [v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala.2006) ], the Me-
*36 “Section 8-l-150(a), Ala.Code 1975, provides:
“ ‘All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.’
“Johnson contends that the Mega-Sweeps contract is void under § 8-1-150 because, she says, this Court in Barber ‘held that, as a matter of Alabama law, playing the MegaSweeps involved the payment of consideration to gamble.’ Johnson’s brief at 17. Johnson thus concludes that the arbitration clause in the MegaSweeps contract is unenforceable because, she argues, under Alabama law ‘ “when a contract is utterly void, it does not have any existence even for the protection of one who relied and acted upon it without notice of its infirmity.” ’ Johnson’s brief at 15 (quoting Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 475, 140 So. 752, 753 (1932)). JCRA, however, argues that Johnson cannot avoid arbitration by challenging the validity or legality of the Mega-Sweeps contract as a whole, rather than the arbitration clause itself. JCRA is correct.
“Recently, in Paragon Ltd., Inc. v. Boles, 987 So.2d 561, 567 (Ala.2007), this Court rejected an argument similar to the one Johnson now makes. In that case Emily Boles sued Paragon alleging that Paragon had breached a construction contract by failing to complete the construction of a house and overcharging Boles for the work it had completed. Paragon responded by arguing ‘that the construction contract contained a valid and enforceable arbitration clause, which required that any dispute related to the contract be settled by arbitration.’ 987 So.2d at 562. Boles argued in response that, ‘under § 34-14A-14, Ala.Code 1975, Paragon [could] not maintain an action to enforce any provision of the contract, including the arbitration clause, because ... Paragon admitted [to the Alabama Home Builders Licen-sure Board] that it had engaged in the construction of Boles’s residence without holding a required license.’ Paragon, 987 So.2d at 567.
“This Court first noted in Paragon that Boles’s argument, like Johnson’s argument in the case now before us, ‘clearly attacks Paragon’s ability to enforce the contract as a whole and does not specifically attack the arbitration clause within the contract.’ 987 So.2d at 567. This Court also stated that ‘[i]t is well established that challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court.’ Paragon, 987 So.2d at 567; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (‘Accordingly, if the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the “making” of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.’ (footnotes omitted)). Relying on the United States Supreme Court decision in Buckeye Check Cashing, Inc. v. Cardegna, [546 U.S. 440 (2006),] the same decision relied on by the trial court here, this Court in Paragon concluded that ‘the *37 arbitration clause in the contract between Paragon and Boles is enforceable, and it is irrelevant whether Paragon’s actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.’ Paragon, 987 So.2d at 568; see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 445-46, 126 S.Ct. 1204 (‘Prima Paint and Southland [Corp. v. Keating, 465 U.S. 1 (1984) ] ... established] three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.’). We concluded Paragon by stating that ‘the arbitration clause is enforceable even if the contract as a whole is later found to be void.’ Paragon, 987 So.2d at 568-69.
“The case before us is closely analogous to Paragon. Johnson emphasizes that in this case ‘there is no relevant determination to be made as to the validity of the MegaSweeps contracts under § 8-l-150(a) that has not already been finally established as a matter of Alabama law in Barber [v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala.2006) ].’ Johnson’s brief at 19. She further contends that
“‘[this] Court examined the Mega-Sweeps itself and determined that, as a matter of Alabama law, the Mega-Sweeps itself was illegal gambling and, more specifically, that it involved gambling consideration. And under § 8-l-150(a), the existence of gambling consideration is the only issue in the determination of whether the Mega-Sweeps contracts were void ab initio.’ “Johnson’s brief at 19 (emphasis in the original). Similarly, however, at the time Paragon asserted arbitration as a defense to litigation, it had ‘entered into a consent agreement with the Alabama Home Builders Licensure Board in which Paragon admitted that it had engaged in the construction of Boles’s residence without holding a required license.’ Paragon, 987 So.2d at 567. Thus, the sole question under § 34-14A-14 as to whether Paragon could ‘bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into’ was already answered — Paragon did not have the ‘license required.’ Nevertheless, we held in Paragon that arbitration was required. Applying our decision in Paragon to the facts of this case, we conclude that, like the construction contract in Paragon, ‘the arbitration clause in the [MegaSweeps] contract between [JCRA] and [Johnson] is enforceable, and it is irrelevant whether [JCRA]’s actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.’ Paragon, 987 So.2d at 568. Therefore the trial court did not err in determining that a contract calling for arbitration exists.”
Johnson I, 1 So.3d at 963-66 (footnotes omitted). This Court then concluded that
“[t]he trial court did not err in compelling Johnson to arbitrate her claims; however, it did exceed its discretion when it declined to stay Johnson’s action pending the outcome of the arbitration proceedings. Therefore, we affirm the trial court’s order insofar as it compels Johnson to arbitrate her claim against JCRA but reverse it insofar as it dismisses Johnson’s action, and we remand the case for the trial court to enter an *38 order staying this action pending the outcome of the arbitration proceedings.”
1 So.3d at 970.
I dissented in part in Johnson I, for the following reasons:
“In § 8-l-150(a), Ala.Code 1975, the Legislature has clearly articulated the position of thé State of Alabama on gambling: ‘All contracts founded in whole or in part on a gambling consideration are void.’ The language could hardly be more explicit. The statute declares that ‘[a]ll contracts,’ not just some, are ‘void,’ not voidable, if those contracts are founded ‘in whole or in part on a gambling consideration.’
“The Jefferson County Racing Association, Inc. (‘JCRA’), argues that when a customer buys a cybertime card to engage in the MegaSweeps activity, that customer enters into a contract with JCRA. The back side of the card states: ‘All rules and regulations are available at Quincy’s Cashier locations,’ and Tour participation in this program is your acceptance and agreement with these rules.’ Rule 8 of those rules is an arbitration clause. However, the customer does not receive or see this card until after he has purchased it and has thereby entered into this alleged contract.
“Even if a contract is formed between JCRA and the customer, and even if that contract does include the posted rules — including the arbitration clause— that contract is, according to § 8-1-150(a), ‘void.’ If, as JCRA insists, the arbitration clause is part of that (void) contract, then the arbitration clause is just as void as the rest of the contract. As distinguished from a voidable contract, a void contract is the same as a nonexistent contract. Mason v. Acceptance Loan Co., 850 So.2d 289, 295 (Ala. 2002). JCRA insists that the arbitration clause in the contract confers upon the arbitrator the authority to decide this dispute. But a void or nonexistent contract cannot confer any authority upon anyone.
“JCRA relies upon Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 168 L.Ed.2d 1038 (2006), for the proposition that an arbitrator, not a court, must decide a challenge to the validity and enforcement of a contract containing an arbitration clause. Buckeye Check Cashing involved an allegedly illegal payday loan, but the illegality of the loan, including the rate of interest actually charged, was the disputed issue. There is no dispute in this case as to the illegality of the Mega-Sweeps scheme. Only two years ago, in Barber v. Jefferson County Racing Association, Inc., 960 So.2d 599 (Ala.2006), this Court clearly and unanimously held that the MegaSweeps scheme constitutes illegal gambling. The illegality of the MegaSweeps scheme is therefore not an issue on the table for either an arbitrator or a trial court to decide.
“The main opinion contends that, although the Court in Barber held that the MegaSweeps scheme is an illegal gambling operation, it did not address the effect of that determination upon the legality or voidness of a MegaSweeps contract. This is a distinction with no significance. The Court need not specifically declare a gambling contract void, because the Legislature has already done so. Section 8-l-150(a) is clear: ‘All contracts founded in whole or in part on a gambling consideration are void.’ The logic is simple and unmistakable: All gambling contracts are void; MegaSweeps contracts are gambling contracts; therefore, MegaSweeps contracts are void.
*39 “JCRA contends that even if the contract to purchase a MegaSweeps card is a void contract, the arbitration clause is nonetheless severable from the rest of the contract. JCRA’s position is internally inconsistent: It has strenuously argued that the posted rules are part of the MegaSweeps contract, but it now wants this Court to hold that some of the rules, but not all of the rules, are part of the contract. But § 8-l-150(a) is explicit on this point. It declares that 7a]ll contracts founded in whole or in part on a gambling consideration are void.’ (Emphasis added.) Had the Legislature intended that some provisions of those contracts not be void, it could have said so in clear terms, but its language is all-encompassing and unmistakable. And subsection (a) continues:
“ ‘Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.’
“§ 8-l-150(a) (emphasis added). The Legislature has clearly provided that the customer’s remedy for losses in an illegal gambling activity is an action in court, not arbitration provided by a clause in a contract that is void ab initio.
“Nevertheless, the main opinion insists that the United States Supreme Court noted in Buckeye Check Cashing that ‘unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is considered by the arbitrator in the first instance.’ 546 U.S. at 445-46, 126 S.Ct. 1204. However, Buckeye Cheek Cashing did not extend to a fact situation like the one here. In determining what kinds of contracts must be submitted to arbitration, the Supreme Court stated that ‘[tjhere can be no doubt that “contract” as used this last time [referring to its use in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 412-13 (1967),] must include contracts that later prove to be void.’ Buckeye Check Cashing, 546 U.S. at 448, 126 S.Ct. 1204. In this case, the MegaSweeps contract has already been proven void by the legislative declaration followed by the judicial determination. I therefore believe that this case can be distinguished from Buckeye Check Cashing.
“Finally, I note that the posted Quincy’s MegaSweeps Official Sweepstakes Rules declare themselves to be ‘[v]oid where prohibited by law.’ This declaration is found at the beginning of the rules in Paragraph 1 and appears to apply to the entire rules. Paragraph 2 provides that ‘[t]he Sweepstakes is subject to all federal, state and local laws and regulations, including without limitation Ala.Code § 8-19D-1 et seq. and Ala. Atty. Gen. Ops. 1999-28 and 2005-173.’ The rules contain no severability clause or any other language that would suggest that the void-where-prohibited-by-law provision applies to anything less than the entire set of rules. If, as JCRA insists, the rules are part of the contract, then by operation of the rules themselves, the arbitration clause is void.
“Because I believe that a void and illegal contract cannot confer authority upon an arbitrator, and because I believe that the facts of this case — a ‘contract’ consisting of a card the customer receives only after paying for it, a contract that allegedly incorporates rules that declare themselves ‘[v]oid where prohibited by law,’ and a statute that not only declares such contracts void but also provides that an action in court is the customer’s remedy — present a situation not contemplated in Buckeye Check Cashing, I dissent as to that holding of the majority.”
*40 Johnson I, 1 So.3d at 970-72 (Parker, J., dissenting).
Upon remand, Johnson’s claim against JCRA was submitted to arbitration before a panel of American Arbitration Association arbitrators (“the arbitration panel”) pursuant to the arbitration agreement. Following the arbitration panel’s entry of a final award, Johnson appealed the award to the circuit court. The circuit court then entered the arbitration panel’s final award as the circuit court’s final judgment on Johnson’s claim.
Pursuant to Rule 59(e), Ala. R. Civ. P., and Rule 71B(f), Ala. R. Civ. P.,[1] Johnson filed a motion to alter, amend, or vacate the circuit court’s judgment. On March 8, 2011, the circuit court denied Johnson’s postjudgment motion. Johnson filed a timely appeal to this Court.
For the same reasons expressed in my dissent in Johnson I, I dissent from this Court’s decision to affirm the circuit court’s judgment entering as its final judgment the arbitration panel’s final award. I maintain my position that the arbitration agreement contained in the MegaSweeps contract is void pursuant to § § 8-1-150(a), Ala.Code 1975. See Joshua R. Welsh, Comment, Has Expansion of the Federal Arbitration Act Gone Too Far?: Enforcing Arbitration Clauses in Void Ab Initio Contracts, 86 Marq. L.Rev. 581, 610 (2002).

" 2 Section 8 — 1—150(a), Ala.Code 1975, provides:
“ ‘(a) All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.’

"3 The relevant portions of the 'Quincy’s MegaSweeps Official Sweepstakes Rules' provide:
“ ‘1. No Purchase Necessary to Win. A purchase will not improve the chance of winning. Void where prohibited by law.
[[Image here]]
“ ‘3. Rules Are Binding. Participation in the Sweepstakes constitutes an entrant’s understanding of, and full and unconditional agreement to and acceptance of, these Official Rules.
[[Image here]]
“ ‘8. Arbitration and Disputes. As a condition of participating in this Sweepstakes, entrant agrees that any and all disputes which cannot be resolved between the parties, claims and causes of action arising out of or connected with this Sweepstakes, or any prizes awarded, or the determination of winners shall be resolved individually, without resort to any form of class action and exclusively by arbitration pursuant to the commercial arbitration rules of the American Arbitration Association, then effective. Further, in any such dispute, under no circumstances will entrant be permitted to obtain awards for, and entrant hereby waives all rights to claim[,] punitive, incidental or consequential damages, including but not limited to attorneys’ fees, out-of-pocket expenses, costs associated with entering the Sweepstakes, and/or any other damages, and entrant further waives all rights to have damages multiplied or increased. All issues and questions concerning the construction, validity, interpretation and enforceability of these Official Rules, or the rights and obligations of entrant and Sponsor in connection with this Sweepstakes, shall be governed by, and construed in accordance with, the laws of the State of Alabama, without giving effect to the conflict of laws rules thereof, and all proceedings shall take place in that State in the City of Birmingham, County of Jefferson.’ ”

. Rule 71B(f) states:
"The clerk of the circuit court promptly shall enter the [arbitration] award as the final judgment of the court. Thereafter, as a condition precedent to further review by any appellate court, any party opposed to the award may file, in accordance with Rule 59, a motion to set aside or vacate the judgment based upon one or more of the grounds specified in Ala.Code 1975, § 6-6-14, or other applicable law. The court shall not grant any such motion until a reasonable time after all parties are served pursuant to paragraph (e) of this rule. The disposition of any such motion is subject to civil and appellate rules applicable to orders and judgments in civil actions.”