Ameriquest Mortgage Company, Inc., and Diana Harmon, the defendants in an action pending in the Jefferson Circuit Court, appeal from an order denying their motion to compel arbitration of various tort and contract claims filed against them by Kathryn Bentley, individually and d/b/a Kathryn Bentley Associates. We reverse and remand.
 I.
Kathryn Bentley owns and operates a real estate appraisal business, Kathryn Bentley Associates, in Jefferson County, Alabama. Bentley performed real estate appraisals for Ameriquest Mortgage Company, Inc. ("Ameriquest"), from May 1998 to January 2000.
In January 2000, Bentley accepted an offer to work for Ameriquest at its Birmingham office as a retail account executive. Her job duties with Ameriquest consisted of originating loans on behalf of the company. The employment agreement Bentley signed upon acceptance of the Ameriquest job stated that her employment was on an "at-will basis" and that it was also conditioned upon her signing an *Page 460 
arbitration agreement. The contract provided: "As a condition of employment, you will be required to sign the standard Mutual Agreement to Arbitrate Claims . . ., which will apply during your employment with the Company and thereafter." Bentley and a representative of Ameriquest both signed the employment contract and the arbitration agreement.[1] The arbitration agreement signed by both parties reads as follows:
"MUTUAL AGREEMENT TO ARBITRATE CLAIMS
 "I recognize that differences may arise between Ameriquest Mortgage Company (collectively `the Company') and me during or following my employment with the Company, and that by entering into this Agreement to Arbitrate Claims (`Agreement'), I anticipate gaining the benefits of a speedy, impartial dispute-resolution procedure.
". . . .
"Claims Covered by the Agreement
 "The Company and I mutually consent to the resolution by arbitration of all claims (`claims'), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, medical condition, or disability); claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims in the Claims Not Covered section below.
 "Except as otherwise provided in this Agreement, both the Company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination) in any way related to any claim covered by this Agreement.
"Claims Not Covered by the Agreement
 "Claims I may have for workers' compensation or unemployment compensation benefits are not covered by this Agreement.
 "Also not covered are claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which I understand and agree that the Company may seek and obtain relief from a court of competent jurisdiction.
". . . .
"Arbitration Procedures
 "The Company and I agree that, except as provided in this Agreement, any arbitration shall be in accordance with the then-current Model Employment Arbitration Procedures of the American Arbitration Association (`AAA') before an Arbitrator who is licensed to practice *Page 461 
law in the state of California (`Arbitrator'). The arbitration shall take place in or near the city in which I am or was last employed by the Company, if I am or was employed in the State of California. If I am or was employed outside the State of California, then at the Company's headquarters in Orange, California.
". . . .
"Interstate Commerce
 "I understand and agree that the Company is engaged in transactions involving interstate commerce and that my employment involves such commerce.
". . . .
"Consideration
 "The promises by the Company and by me to arbitrate differences, rather than litigate them before courts or other bodies, provide consideration for each other.
"Employment Agreement
 "This Agreement is not, and shall not be construed to create, any contract of employment, express or implied. Nor does this agreement in any way alter the `at-will' status of my employment.
"Voluntary Agreement
 "I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.
 "I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.
"/s/ M. Kathryn Bentley
"Signature of Associate
". . . .
"01/27/00
"Date"
(Capitalization original.)
The following facts were presented during the argument on the motion to compel arbitration. Bentley worked for Ameriquest originating loans until March 2000. Bentley became dissatisfied with her compensation, and she believed that Ameriquest had unilaterally changed the terms and conditions of her compensation package. Bentley decided to return to her real estate appraisal business. Bentley terminated her employment with Ameriquest, but claims that she left only after Ameriquest allegedly represented to her that the company would use her as a preferred real estate appraiser if she terminated her employment.
On June 19, 2000, Bentley learned that she had been removed from Ameriquest's "preferred appraiser's list." She was shown a facsimile transmission from Diana Harmon, an Ameriquest representative in California, which stated that Bentley had been removed from the preferred appraiser's list "for cause" because of a perceived conflict of interest. Harmon claimed that Bentley had been removed from the list because she had "refused to assure Ms. Harmon that she will not allow her prior experience as an Ameriquest Account *Page 462 
Executive to interfere with her professional responsibilities as an independent appraiser."
Bentley sued Ameriquest and Harmon in the Circuit Court of Jefferson County, Alabama. In her complaint, she alleged breach of contract, fraud, defamation, and tortious interference with business relations against both defendants. All of the claims are based on the alleged representations by Ameriquest to Bentley while she was employed at Ameriquest.
Ameriquest and Harmon moved to stay the proceedings and to compel arbitration based on the arbitration agreement signed by Bentley. In support of their motion, Ameriquest and Harmon submitted a copy of the arbitration agreement, a copy of the employment agreement, and the affidavit of Ginger Crawford, human resources manager for Ameriquest. Crawford's affidavit stated, in pertinent part, that Ameriquest is a Delaware corporation whose headquarters are in California. The affidavit also stated:
 "4. While employed as an account executive at Ameriquest, plaintiff received monthly payments from the Ameriquest headquarters in Orange, California."
In her response to the motion to compel arbitration, Bentley argued that the arbitration agreement did not apply to the claims she was asserting because, she says, the claims are unrelated to her employment with Ameriquest and, even if they were, her employment contract did not sufficiently affect interstate commerce so as to invoke the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").
The trial court denied Ameriquest and Harmon's motion to compel arbitration. In its order, the trial court found that the arbitration agreement was unenforceable for three reasons: 1) no binding arbitration agreement was formed by the parties because there was no separate written acknowledgment of the arbitration agreement executed by the parties; 2) the arbitration agreement fails for lack of consideration because continued at-will employment was the recognized consideration for the agreement and Bentley's claims arose after her at-will employment with Ameriquest was terminated; and 3) because Ameriquest and Harmon did not meet their burden of showing that the employment contract between the parties substantially affects interstate commerce. Ameriquest and Harmon appeal.
 II.
The appeal of an order denying a motion to compel arbitration is subject to de novo review. Celtic Life Ins. Co. v. McLendon, 814 So.2d 222,224 (Ala. 2001); Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280
(Ala. 2000); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1172 (Ala. 1999). A trial court is required to stay or dismiss proceedings and to compel arbitration if the parties have entered into a valid contract containing an arbitration agreement. Ex parte Colquitt, 808 So.2d 1018,1022 (Ala. 2001). The party seeking to compel arbitration has the initial burden of producing a written arbitration agreement, covering a transaction that "substantially affects interstate commerce." Sisters ofthe Visitation v. Cochran Plastering Co., 775 So.2d 759, 761 (Ala. 2000). We hold that Ameriquest and Harmon have clearly satisfied their burden and have shown a valid, controlling contract containing an arbitration agreement in a transaction that substantially affects interstate commerce.
 A.
Section 2 of the FAA provides:
 "A written provision in any . . . contract evidencing a transaction involving *Page 463 
[interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. The federal policy favoring arbitration is so strong that, as a matter of law, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ." Moses H. ConeMem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); GreenTree Fin. Corp. v. Wampler, 749 So.2d 409, 416 (Ala. 1999).
It is undisputed that in this case the arbitration agreement was set forth in a writing signed by both parties. Also the claims Bentley asserts are clearly within the scope of the arbitration agreement. The agreement provides, in pertinent part:
 "The Company and I mutually consent to the resolution by arbitration of all claims (`claims'), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise."
Bentley's claims, which are based on alleged representations made to her by Harmon while she was employed by Ameriquest, certainly fall within this broad provision. Therefore, Ameriquest and Harmon met their burden of showing that the parties have entered into a valid contract containing an arbitration agreement. However, the trial court, purportedly relying on Ex parte Beasley, 712 So.2d 338 (Ala. 1998), held that the parties did not intend to enter into a binding arbitration contract and that, even had they intended to do so, the contract would fail for lack of consideration.
In Beasley, all employees, as a condition of continued employment, were required to acknowledge receipt of a new handbook; the handbook contained an arbitration agreement. The employee in Beasley did not sign the actual acknowledgment form contained in handbook, but signed only a separate acknowledgment form. The unsigned acknowledgment in the handbook contained the following statement: "[N]o written statement or agreement in this handbook concerning employment is binding. . . ."712 So.2d at 340 (emphasis omitted). We noted that the clause in the acknowledgment form disclaiming the binding effect of the handbook would have rendered the arbitration provision of the handbook inoperative, but that the employee did not sign even that form. Beasley, 712 So.2d at 341. The acknowledgment form signed by the employee did not contain an arbitration clause. We therefore concluded that, "[a]bsent [the employee]'s signature on a document that contains a valid arbitration clause, we cannot hold that she agreed to arbitrate her employment claims against [the employer]." 712 So.2d at 341.
The trial court seized upon both our language in Beasley and the clause in the arbitration agreement signed by Bentley, which read, "[t]his Agreement is not, and shall not be construed to create, any contract of employment, express or implied." The trial court held:
 "The employer in both [Beasley and the present case] did not wish [to] create a contract of employment by providing employees with an employee handbook in Beasley which contained the arbitration clause; the employer in the case before the Court, likewise, by the wording of its submitted document did not evidence an intent to create a binding contract of employment. By its terms, the document denies that a contract *Page 464 
between the parties was intended or created."
The trial court's reliance on Beasley, however, is misplaced. The clause in the unsigned employee handbook in Beasley completely disclaimed the binding effect of the handbook. The clause in the agreement signed by Bentley, however, appears merely to reflect the parties' intention that the arbitration agreement, the signing of which was a condition of employment incorporated into the employment contract, was not itself a contract of employment. The clause hardly rises to the effect given it by the trial court: that it "denies that a contract between the parties was intended or created." Even if that interpretation of the clause was plausible, under well-established rules of contract construction, "where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms." Homes of Legend, Inc. v. McCollough,776 So.2d 741, 746 (Ala. 2000).
The trial court's conclusion that the arbitration agreement was unenforceable because of a failure of consideration is also without merit. The trial court held:
 "Continued at-will employment, thus, is clearly the recognized consideration necessary to support and make binding an arbitration agreement in the at-will employment context. [Bentley] alleges and affirmatively states in response to [Ameriquest and Harmon's] motion that the basis of all three counts of her cause of action arose after the at-will employment terminated. The Court therefore finds . . . that the arbitration provision before it, to the extent that its scope attempts to extend to claims which arise following or beyond the term of the at-will employment or its termination, is unenforceable due to a failure of consideration."
This Court has consistently held, however, that providing continued at-will employment is sufficient consideration to make an employee's promise to arbitrate binding. Gadsden Budweiser Distrib. Co. v. Holland,807 So.2d 528, 531 (Ala. 2001); Ex parte McNaughton, 728 So.2d 592, 595
(Ala. 1998). The fact that the at-will employment is or may be terminated does not work a failure of consideration. This is especially true when the contract, by its terms, extends beyond the termination of employment. For example, in both Condelles v. Alabama Telecasters, Inc.,530 So.2d 201, 204 (Ala. 1988), and Daughtry v. Capital Gas Co.,285 Ala. 89, 93, 229 So.2d 480, 483 (1969), we held that continued at-will employment was sufficient consideration for signing a noncompetition agreement, an agreement whose obligation, by its very nature, extends beyond the employment that served as consideration. The trial court, therefore, erred in holding that no binding arbitration agreement was formed.
 B.
A party seeking to compel arbitration has the burden of proving that the contract containing the arbitration agreement has a substantial effect on interstate commerce. Liberty Nat'l Life Ins. Co. v. Douglas,826 So.2d 806 (Ala. 2002); Ex parte Ephraim, 806 So.2d 352, 356 (Ala. 2001); Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759,761 (Ala. 2000). The trial court found, and Bentley argues in her brief, that Ameriquest and Harmon have not met their burden of proof because Bentley's claims have no substantial effect on interstate commerce. However, in determining whether a contract containing an arbitration agreement substantially affects interstate commerce, *Page 465 
we look to the contract, not the claims sought to be arbitrated.Benchmark Homes, Inc. v. Aleman, 786 So.2d 1101, 1104 (Ala. 2000) (noting that the "language of 9 U.S.C. § 2 does not apply the term `involving commerce' to the controversy, but to the contract").
The affidavit of Ginger Crawford, human resources manager for Ameriquest, shows that the employment contract provided Bentley with a position that unquestionably involved interstate commerce. While she was employed as an account executive at Ameriquest, Bentley received her monthly salary from Ameriquest's California headquarters. This fact, which is undisputed, sufficiently satisfies Ameriquest and Harmon's burden of proof regarding the employment contract's effect on interstate commerce. In the present action, Ameriquest and Harmon have met their burden of proving that the employment agreement had a substantial effect on interstate commerce.
 III.
On appeal, Bentley raises for the first time issues of unconscionability. Unconscionability is an affirmative defense that must be specially pleaded. AmSouth Bank v. Dees, 847 So.2d 923 (Ala. 2002). Bentley neither pleaded nor argued below unconscionability as a basis for avoidance of the arbitration agreement at issue. This Court can affirm the judgment of a trial court on a basis different from the one on which it ruled, Smith v. Equifax, 537 So.2d 463 (Ala. 1988), but the constraints of procedural due process prevent us from extending that principle to a totally omitted affirmative defense. Accordingly, we reject Bentley's unconscionability argument.
 IV.
The trial court erred in refusing to compel arbitration of Bentley's claims against Ameriquest and Harmon. Therefore, we reverse the order denying Ameriquest and Harmon's motion to compel arbitration and remand the cause for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
SEE, J., concurs in the result.
MOORE, C.J., dissents.
[1] Because those documents were signed contemporaneously in the course of the same transaction by the same parties, they are "`in the eye of the law one instrument.'" Quality Truck Auto Sales v. Yassine,730 So.2d 1164, 1170 n. 8 (Ala. 1999) (quoting Weeden v. Asbury,223 Ala. 687, 690, 138 So. 267, 270 (1931)).