1 So.3d 960 (2008)
Debra JOHNSON
v.
JEFFERSON COUNTY RACING ASSOCIATION, INC., d/b/a The Birmingham Race Course.
1061398.
Supreme Court of Alabama.
June 27, 2008.
*961 Matthew H. Lembke, Michael R. Pennington, and Marc James Ayers of Bradley Arant Rose & White, LLP, Birmingham, for appellant.
William M. Slaughter, J. Michael Rediker, and Peter J. Tepley of Haskell Slaughter Young & Rediker, LLC, Birmingham; and J. Mark White, Augusta S. Dowd, and William M. Bowen, Jr., of White Arnold Andrews & Dowd, P.C., Birmingham; and John M. Bolton III and Charlana W. Spencer of Sasser Bolton Stidham & Sefton, P.C., Montgomery, for appellee.
SEE, Justice.
Debra Johnson appeals a Jefferson Circuit Court order compelling her to arbitrate her claims against the Jefferson County Racing Association, Inc., d/b/a The Birmingham Race Course ("JCRA"), and dismissing her action. We affirm in part and reverse in part.

Facts and Procedural History
Johnson brought the present action following this Court's decision in Barber v. Jefferson County Racing Ass'n, Inc., 960 So.2d 599, 604 (Ala.2006), in which we determined that an activity advertised as "Quincy's MegaSweeps" ("the MegaSweeps") initiated by Innovative Sweepstakes Systems, Inc., at the Birmingham Race Course "involve[d] the use of slot machines," a gambling device that is illegal in Alabama.[1] Johnson sued JCRA pursuant *962 to § 8-1-150(a), Ala.Code 1975,[2] on her own behalf and on behalf of a class of similarly situated persons, seeking to recover money that she, and others, had paid to participate in the MegaSweeps.
JCRA moved the trial court to compel Johnson to arbitrate her claims and to dismiss Johnson's action. JCRA argued that by participating in the MegaSweeps, Johnson had assented to the arbitration provision found in the "official rules" for the MegaSweeps ("the MegaSweeps contract").[3] Johnson opposed JCRA's motion, arguing that JCRA could not establish a valid contract calling for arbitration. Specifically, Johnson argued that the MegaSweeps contract amounted to a contract founded on a gambling consideration and that, therefore, the contract is void and unenforceable under § 8-1-150(a), Ala. Code 1975. Johnson alternatively argued that, even if the MegaSweeps contract is not void in its entirety, because one of the MegaSweeps rules includes a void-where-prohibited-by-law provision, the arbitration clause found in those rules is void and unenforceable.
The trial court noted that "the crux of [Johnson]'s complaint is that the agreement as a whole, including the arbitration provision, was rendered void or invalid by the Court's holding in Barber [v. Jefferson County Racing Ass'n, Inc., 960 So.2d 599 (Ala.2006)]." Relying on the United States Supreme Court's decision in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the trial court then determined that because Johnson's challenge was to the MegaSweeps contract as a whole, rather *963 than the arbitration clause specifically, the issue of the validity of the contract was to be decided by the arbitrator. The trial court then dismissed Johnson's action and ordered that she arbitrate her claims.
Johnson moved the trial court to alter, amend, or vacate its order under Rule 59(e), Ala. R. Civ. P. In her motion, Johnson reasserted and clarified the arguments she had made in her brief opposing JCRA's motion to compel arbitration, but she also argued that the trial court should have stayed the action pending arbitration instead of dismissing it. The trial court denied her motion. Johnson now appeals, arguing that neither the MegaSweeps contract nor the arbitration clause itself is valid or enforceable. Alternatively, Johnson argues that, even if we conclude that the arbitration clause is valid and enforceable, the trial court should have stayed, rather than dismissed, her action pending the outcome of arbitration.

Analysis

I. Order Compelling Arbitration
Johnson argues that the trial court erred when it compelled her to arbitrate her claims against JCRA because, she says, the MegaSweeps contract is void ab initio and because, she argues, the arbitration clause itself is void.

A. Standard of Review
"We review the trial court's grant or denial of a motion to compel arbitration de novo." McKay Bldg. Co. v. Juliano, 949 So.2d 882, 884 (Ala.2006) (citing Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala.2003)). "`Initially, the party seeking to compel arbitration must prove 1) the existence of a contract calling for arbitration, and 2) that the contract "is `a contract evidencing a transaction involving commerce' within the meaning of the Federal Arbitration Act (FAA)."'" Owens v. Coosa Valley Health Care, Inc., 890 So.2d 983, 986 (Ala.2004) (quoting Hudson v. Outlet Rental Car Sales, Inc., 876 So.2d 455, 457 (Ala.2003), quoting in turn Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 53, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003), quoting in turn 9 U.S.C. § 2). "The moving party `must "`produce some evidence which tends to establish its claim.'"'" Edwards v. Costner, 979 So.2d 757, 761 (Ala.2007) (quoting Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala. 2003), quoting in turn Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala. 1995), quoting in turn In re American Freight Sys., Inc., 164 B.R. 341, 345 (D.Kan.1994)). Finally, "[o]nce the moving party has supported his or her motion to compel arbitration, the nonmovant then has the burden to present evidence tending to show that the arbitration agreement is invalid or inapplicable to the case." McKay, 949 So.2d at 884 (citing Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala.2003)).

B. Existence of a Contract
Johnson argues that JCRA cannot meet its initial burden of demonstrating the existence of a contract calling for arbitration because, she argues, "under this Court's unanimous decision in Barber [v. Jefferson County Racing Ass'n, Inc., 960 So.2d 599 (Ala.2006)], the MegaSweeps contracts relied on by the JCRA are void ab initio."[4] Johnson's brief at 15 (emphasis in the original).
*964 Section 8-1-150(a), Ala.Code 1975, provides:
"All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."[5]
Johnson contends that the MegaSweeps contract is void under § 8-1-150 because, she says, this Court in Barber "held that, as a matter of Alabama law, playing the MegaSweeps involved the payment of consideration to gamble." Johnson's brief at 17. Johnson thus concludes that the arbitration clause in the MegaSweeps contract is unenforceable because, she argues, under Alabama law "`when a contract is utterly void, it does not have any existence even for the protection of one who relied and acted upon it without notice of its infirmity.'" Johnson's brief at 15 (quoting Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 475, 140 So. 752, 753 (1932)). JCRA, however, argues that Johnson cannot avoid arbitration by challenging the validity or legality of the MegaSweeps contract as a whole, rather than the arbitration clause itself. JCRA is correct.
Recently, in Paragon Ltd., Inc. v. Boles, 987 So.2d 561, 567 (Ala.2007), this Court rejected an argument similar to the one Johnson now makes.[6] In that case Emily Boles sued Paragon alleging that Paragon had breached a construction contract by failing to complete the construction of a house and overcharging Boles for the work it had completed. Paragon responded by arguing "that the construction contract contained a valid and enforceable arbitration clause, which required that any dispute related to the contract be settled by arbitration." 987 So.2d at 562. Boles argued in response that, "under § 34-14A-14, Ala.Code 1975,[[7]] Paragon [could] not *965 maintain an action to enforce any provision of the contract, including the arbitration clause, because ... Paragon admitted [to the Alabama Home Builders Licensure Board] that it had engaged in the construction of Boles's residence without holding a required license." Paragon, 987 So.2d at 567.
This Court first noted in Paragon that Boles's argument, like Johnson's argument in the case now before us, "clearly attacks Paragon's ability to enforce the contract as a whole and does not specifically attack the arbitration clause within the contract." 987 So.2d at 567. This Court also stated that "[i]t is well established that challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court." Paragon, 987 So.2d at 567; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("Accordingly, if the claim is fraud in the inducement of the arbitration clause itselfan issue which goes to the `making' of the agreement to arbitratethe federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." (footnotes omitted)). Relying on the United States Supreme Court decision in Buckeye Check Cashing, Inc. v. Cardegna, the same decision relied on by the trial court here, this Court in Paragon concluded that "the arbitration clause in the contract between Paragon and Boles is enforceable, and it is irrelevant whether Paragon's actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court." Paragon, 987 So.2d at 568; see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 445-46, 126 S.Ct. 1204 ("Prima Paint and Southland [Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)] ... establish[ed] three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.").[8] *966 We concluded Paragon by stating that "the arbitration clause is enforceable even if the contract as a whole is later found to be void." Paragon, 987 So.2d at 568-569.
The case before us is closely analogous to Paragon. Johnson emphasizes that in this case "there is no relevant determination to be made as to the validity of the MegaSweeps contracts under § 8-1-150(a) that has not already been finally established as a matter of Alabama law in Barber [v. Jefferson County Racing Ass'n, Inc., 960 So.2d 599 (Ala.2006)]." Johnson's brief at 19. She further contends that
"[this] Court examined the MegaSweeps itself and determined that, as a matter of Alabama law, the MegaSweeps itself was illegal gambling and, more specifically, that it involved gambling consideration. And under § 8-1-150(a), the existence of gambling consideration is the only issue in the determination of whether the MegaSweeps contracts were void ab initio."

Johnson's brief at 19 (emphasis in the original). Similarly, however, at the time Paragon asserted arbitration as a defense to litigation, it had "entered into a consent agreement with the Alabama Home Builders Licensure Board in which Paragon admitted that it had engaged in the construction of Boles's residence without holding a required license." Paragon, 987 So.2d at 567. Thus, the sole question under § 34-14A-14 as to whether Paragon could "bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into" was already answeredParagon did not have the "license required." Nevertheless, we held in Paragon that arbitration was required. Applying our decision in Paragon to the facts of this case, we conclude that, like the construction contract in Paragon, "the arbitration clause in the [MegaSweeps] contract between [JCRA] and [Johnson] is enforceable, and it is irrelevant whether [JCRA]'s actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court."[9]Paragon, 987 So.2d at 568. Therefore the trial court did not err in determining that a contract calling for arbitration exists.

*967 C. Validity of the Arbitration Provision
Johnson argues alternatively that the trial court erred when it compelled Johnson to arbitrate her claims against JCRA because "the arbitration provision at issue is and always was void under its own terms." Johnson's brief at 21. The Supreme Court of the United States noted in Prima Paint that a federal district court may adjudicate "an issue which goes to the `making' of the agreement to arbitrate," such as fraud in the inducement. 388 U.S. at 403-04, 87 S.Ct. 1801. As the Supreme Court made clear in Buckeye Check Cashing, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator." 546 U.S. at 445-46, 126 S.Ct. 1204. Johnson asserts that the first provision in the MegaSweeps "Official Rules," which Johnson characterizes as a "separate addendum" to the MegaSweeps "contracts," "expressly provid[es] that the Rules are void and unenforceable if the MegaSweeps is `prohibited by law.'" Johnson's brief at 21. Rule 1 of the "Quincy's MegaSweeps Official Sweepstakes Rules" provides:
"1. No Purchase Necessary to Win. A purchase will not improve the chance of winning. Void where prohibited by law."
Thus, Johnson argues that the void-where-prohibited-by-law language renders the arbitration clause itself void and unenforceable.
JCRA responds, first, that the void-where-prohibited-by-law language should apply only to the rule in which it appears, i.e., Rule 1, and not to all the official rules as argued by Johnson. JCRA's brief at 48. Alternatively, JCRA argues that even if Rule 1 were applicable to all the official rules, the rules themselves constitute the MegaSweeps contract; thus, JCRA contends, this "alternative" argument does nothing more than rehash Johnson's original argument that the MegaSweeps contract as a whole is void. JCRA is correct.
Even though Johnson characterizes the official rules as "a separate addendum to the MegaSweeps contract allegedly available on the [I]nternet and posted at the MegaSweeps facility," Johnson provides no citation to the record to support this proposition, nor does she clarify what, if anything, is included in the MegaSweeps contract, other than the "Official Rules." Moreover, as JCRA notes, Rule 1 does not refer directly to the arbitration provision contained in Rule 8. In fact, Rule 1 does not refer to any of the other rules, individually or collectively. Thus, it appears that if the void-where-prohibited-by-law language were to apply to anything outside Rule 1, it would appear to apply to the MegaSweeps contract as a whole.
Johnson does not argue that she was unaware of the arbitration agreement, that she was fraudulently induced to enter into the arbitration agreement, that the arbitration agreement itself is unconscionable, or any other "issue that goes to the `making' of the agreement to arbitrate." Prima Paint, 388 U.S. at 403-04, 87 S.Ct. 1801. Instead, Johnson in effect argues again that the contract containing the arbitration agreement is void. It is the role of the arbitrator, however, and not of the court, to determine whether the contract as a whole is void. Buckeye Check Cashing, supra. Therefore, the trial court did not err in ordering Johnson to arbitrate her claims.

II. Dismissal of Johnson's Action
After the trial court ordered Johnson to arbitrate her claims against JCRA and dismissed her action, Johnson moved the trial court to alter, amend, or vacate its order under Rule 59(e), Ala. R. Civ. P. In her motion, Johnson reasserted the arguments she had made in her brief opposing *968 JCRA's motion to compel arbitration and also argued that the trial court should have stayed the action instead of dismissing it. The trial court denied her motion. Johnson now argues that, even if this Court determines that the trial court was correct in ordering Johnson to arbitrate her claims, the trial court exceeded its discretion when it refused to stay her action pending the outcome of arbitration. We agree.

A. Standard of Review
Our standard of review for rulings on postjudgment motions is well settled.[10]
"`In general, whether to grant or to deny a posttrial motion is within the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless by its ruling the court abused some legal right and the record plainly shows that the trial court erred.'"
Hitt v. State of Alabama Pers. Bd., 873 So.2d 1080, 1085 (Ala.2003) (quoting Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala.2000)).

B. Analysis
Johnson argues that she is entitled to a stay as a matter of right under § 3 of the Federal Arbitration Act ("the FAA")[11] or, alternatively, that even if she is not entitled to a mandatory stay, a stay is nonetheless warranted in this case. We pretermit discussion of whether Johnson is entitled to a mandatory stay under § 3 of the FAA because we conclude that, under Alabama law, the trial court exceeded its discretion when it failed to grant Johnson's postjudgment motion to stay the proceedings pending the outcome of arbitration.[12]
*969 Johnson argues that the trial court exceeded its discretion when it refused to grant her Rule 59(e), Ala. R. Civ. P., motion, requesting the trial court to stay her action pending the outcome of arbitration instead of dismissing it. Although this Court has not squarely addressed how trial courts should treat an action that has been compelled to arbitration, this Court has instructed trial courts either to stay or to dismiss an action in which the trial court has compelled arbitration. See CitiFinancial Corp., L.L.C. v. Peoples, 973 So.2d 332, 341 (Ala.2007) ("On remand, the trial court shall grant the motion to compel arbitration and either issue a stay of these proceedings pending arbitration or dismiss the case."); Ameriquest Mortgage Co. v. Bentley, 851 So.2d 458, 462 (Ala.2002) ("A trial court is required to stay or dismiss proceedings and to compel arbitration if the parties have entered into a valid contract containing an arbitration agreement." (citing Ex parte Colquitt, 808 So.2d 1018, 1022 (Ala.2001))). Our previous decisions thus give implicit support to the proposition that under Alabama law a trial court has discretion to determine whether an action compelled to arbitration should be stayed or dismissed, and today we so hold.
Johnson asserts that a stay, rather than a dismissal, is warranted in this case because, she notes, the arbitrator may decline to hear the case if the arbitrator determines that a valid contract does not exist. Johnson's brief at 29. In support of this argument, she cites Lewis v. Oakley, 847 So.2d 307, 330 (Ala.2002), in which this Court recognized that where an arbitrator may decline to accept a case "it is prudent that the trial court retain jurisdiction pending a decision by the [arbitrator] concerning whether it will accept this dispute for arbitration."
Johnson also contends that a stay is justified in this case because an action under § 8-1-150 must be "commenced within six months from the time of such payment or delivery." § 8-1-150(a), Ala. Code 1975. This short statute of limitations, Johnson argues, "will make it difficult for absentee class members to pursue their claims in court even if the arbitrator declines jurisdiction." Johnson's brief at 30. She further contends:
"Because the statute of limitations as to the absent class members' claims will toll only while the action is pending ... even a short arbitration will foreclose the possibility of recovery.... Because the trial court dismissed the action instead [of] staying it, even if Ms. Johnson wins in arbitration, absentee class members may not be able to recover against the JCRA."
Johnson's brief at 30.
She directs our attention to Porter v. Colonial Life & Accident Insurance Co., 828 So.2d 907, 908 (Ala.2002), in which this Court stated:
"We note a potential for injustice. If a plaintiff's court action be dismissed to enforce an arbitration agreement, but, through no fault of the plaintiff's, the arbitration be not concluded or some of the plaintiff's claims be not arbitrated, a statute of limitations could bar a refiling of the unarbitrated claims in court. Sometimes, for instance, an arbitrator's first duty under an arbitration agreement is to determine the arbitrability of a plaintiff's claims. In such a case, the arbitrator could rule that some or all of the plaintiff's claims should be litigated and not arbitrated. Moreover, a stay, as distinguished from a dismissal, would likely better conserve the time and resources *970 of the parties and the trial court even in the event of a successful arbitration, inasmuch as the winner commonly wants the arbitration award reduced to a judgment."[13]
JCRA asserts that "Johnson's argument is not that she herself would be harmed or prejudiced in any way by the trial court's dismissal of her case, but that other persons who she wishes to represent ... might be harmed if the arbitrator ultimately declined jurisdiction." JCRA's brief at 64. JCRA notes that no class has been certified in this action and that "no notice of Johnson's putative class action suit was provided to any other MegaSweeps customers and thus no one has relied on her lawsuit to resolve any potential [MegaSweeps] claims." JCRA's brief at 64.
Although no class has been certified, we recognize that in this case, as there was in Porter, there is a real potential for injustice. The statute of limitations in § 8-1-150(a), Ala.Code 1975, is a short one, and, if "through no fault of [Johnson], the arbitration be not concluded or some of [Johnson's] claims be not arbitrated, a statute of limitations could bar a refiling of the unarbitrated claims in court." Porter, 828 So.2d at 908. In the case before us, an arbitrator may well decide that there is no valid contract containing an arbitration clause and decline jurisdiction. Then, because of the short statute-of-limitations period, both Johnson's claims and the claims of the prospective class could be time-barred. For these reasons, we hold that the trial court exceeded its discretion when it dismissed, rather than stayed, Johnson's claims. We, therefore, reverse the decision of the trial court and remand this case for the trial court to vacate its dismissal of Johnson's claims and to enter an order staying her action pending the outcome of the arbitration proceedings.

Conclusion
The trial court did not err in compelling Johnson to arbitrate her claims; however, it did exceed its discretion when it declined to stay Johnson's action pending the outcome of the arbitration proceedings. Therefore, we affirm the trial court's order insofar as it compels Johnson to arbitrate her claim against JCRA but reverse it insofar as it dismisses Johnson's action, and we remand the case for the trial court to enter an order staying this action pending the outcome of the arbitration proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
MURDOCK, J., concurs in the result.
PARKER, J., concurs in part and dissents in part.
PARKER, Justice (concurring in part and dissenting in part).
In § 8-1-150(a), Ala.Code 1975, the Legislature has clearly articulated the position of the State of Alabama on gambling: "All contracts founded in whole or *971 in part on a gambling consideration are void." The language could hardly be more explicit. The statute declares that "[a]ll contracts," not just some, are "void," not voidable, if those contracts are founded "in whole or in part on a gambling consideration."
The Jefferson County Racing Association, Inc. ("JCRA"), argues that when a customer buys a cybertime card to engage in the MegaSweeps activity, that customer enters into a contract with JCRA. The back side of the card states: "All rules and regulations are available at Quincy's Cashier locations," and "Your participation in this program is your acceptance and agreement with these rules." Rule 8 of those rules is an arbitration clause. However, the customer does not receive or see this card until after he has purchased it and has thereby entered into this alleged contract.
Even if a contract is formed between JCRA and the customer, and even if that contract does include the posted rules  including the arbitration clause  that contract is, according to § 8-1-150(a), "void." If, as JCRA insists, the arbitration clause is part of that (void) contract, then the arbitration clause is just as void as the rest of the contract. As distinguished from a voidable contract, a void contract is the same as a nonexistent contract. Mason v. Acceptance Loan Co., 850 So.2d 289, 295 (Ala.2002). JCRA insists that the arbitration clause in the contract confers upon the arbitrator the authority to decide this dispute. But a void or nonexistent contract cannot confer any authority upon anyone.
JCRA relies upon Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), for the proposition that an arbitrator, not a court, must decide a challenge to the validity and enforcement of a contract containing an arbitration clause. Buckeye Check Cashing involved an allegedly illegal payday loan, but the illegality of the loan, including the rate of interest actually charged, was the disputed issue. There is no dispute in this case as to the illegality of the MegaSweeps scheme. Only two years ago, in Barber v. Jefferson County Racing Association, Inc., 960 So.2d 599 (Ala.2006), this Court clearly and unanimously held that the MegaSweeps scheme constitutes illegal gambling. The illegality of the MegaSweeps scheme is therefore not an issue on the table for either an arbitrator or a trial court to decide.
The main opinion contends that, although the Court in Barber held that the MegaSweeps scheme is an illegal gambling operation, it did not address the effect of that determination upon the legality or voidness of a MegaSweeps contract. This is a distinction with no significance. The Court need not specifically declare a gambling contract void, because the Legislature has already done so. Section 8-1-150(a) is clear: "All contracts founded in whole or in part on a gambling consideration are void." The logic is simple and unmistakable: All gambling contracts are void; MegaSweeps contracts are gambling contracts; therefore, MegaSweeps contracts are void.
JCRA contends that even if the contract to purchase a MegaSweeps card is a void contract, the arbitration clause is nonetheless severable from the rest of the contract. JCRA's position is internally inconsistent: It has strenuously argued that the posted rules are part of the MegaSweeps contract, but it now wants this Court to hold that some of the rules, but not all of the rules, are part of the contract. But § 8-1-150(a) is explicit on this point. It declares that "[a]ll contracts founded in whole or in part on a gambling consideration are void." (Emphasis added.) Had the Legislature intended that some provisions of those contracts not be void, it *972 could have said so in clear terms, but its language is all-encompassing and unmistakable. And subsection (a) continues:
"Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."
§ 8-1-150(a) (emphasis added). The Legislature has clearly provided that the customer's remedy for losses in an illegal gambling activity is an action in court, not arbitration provided by a clause in a contract that is void ab initio.
Nevertheless, the main opinion insists that the United States Supreme Court noted in Buckeye Check Cashing that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445-46, 126 S.Ct. 1204. However, Buckeye Check Cashing did not extend to a fact situation like the one here. In determining what kinds of contracts must be submitted to arbitration, the Supreme Court stated that "[t]here can be no doubt that `contract' as used this last time [referring to its use in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 412-13, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967),] must include contracts that later prove to be void." Buckeye Check Cashing, 546 U.S. at 448, 126 S.Ct. 1204. In this case, the MegaSweeps contract has already been proven void by the legislative declaration followed by the judicial determination. I therefore believe that this case can be distinguished from Buckeye Check Cashing.
Finally, I note that the posted Quincy's MegaSweeps Official Sweepstakes Rules declare themselves to be "[v]oid where prohibited by law." This declaration is found at the beginning of the rules in Paragraph 1 and appears to apply to the entire rules. Paragraph 2 provides that "[t]he Sweepstakes is subject to all federal, state and local laws and regulations, including without limitation Ala.Code § 8-19D-1 et seq. and Ala. Atty. Gen. Ops. 1999-28 and 2005-173." The rules contain no severability clause or any other language that would suggest that the void-where-prohibited-by-law provision applies to anything less than the entire set of rules. If, as JCRA insists, the rules are part of the contract, then by operation of the rules themselves, the arbitration clause is void.
Because I believe that a void and illegal contract cannot confer authority upon an arbitrator, and because I believe that the facts of this case  a "contract" consisting of a card the customer receives only after paying for it, a contract that allegedly incorporates rules that declare themselves "[v]oid where prohibited by law," and a statute that not only declares such contracts void but also provides that an action in court is the customer's remedy  present a situation not contemplated in Buckeye Check Cashing, I dissent as to that holding of the majority.
However, when a trial court orders a case to arbitration, the court should stay the proceedings rather than dismiss the case, so that the court can reassume jurisdiction if the parties change their minds about arbitration, if the arbitration process breaks down, or if a party needs to enforce an arbitration agreement or award in court, or to toll the statute of limitations. Accordingly, I concur with the majority's ruling that the trial court exceeded its discretion in dismissing Johnson's complaint, and I agree with the majority that the proper course would have been for the trial court to stay the action pending arbitration.
NOTES
[1] Section 13A-12-27, Ala.Code 1975, provides:

"(a) A person commits the crime of possession of a gambling device if with knowledge of the character thereof he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:
"(1) A slot machine; or
"(2) Any other gambling device, with the intention that it be used in the advancement of unlawful gambling activity.
"(b) Possession of a gambling device is a Class A misdemeanor."
[2] Section 8-1-150(a), Ala.Code 1975, provides:

"(a) All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."
[3] The relevant portions of the "Quincy's MegaSweeps Official Sweepstakes Rules" provide:

"1. No Purchase Necessary to Win. A purchase will not improve the chance of winning. Void where prohibited by law.
"....
"3. Rules Are Binding. Participation in the Sweepstakes constitutes an entrant's understanding of, and full and unconditional agreement to and acceptance of, these Official Rules.
"....
"8. Arbitration and Disputes. As a condition of participating in this Sweepstakes, entrant agrees that any and all disputes which cannot be resolved between the parties, claims and causes of action arising out of or connected with this Sweepstakes, or any prizes awarded, or the determination of winners shall be resolved individually, without resort to any form of class action and exclusively by arbitration pursuant to the commercial arbitration rules of the American Arbitration Association, then effective. Further, in any such dispute, under no circumstances will entrant be permitted to obtain awards for, and entrant hereby waives all rights to claim[,] punitive, incidental or consequential damages, including but not limited to attorneys' fees, out-of-pocket expenses, costs associated with entering the Sweepstakes, and/or any other damages, and entrant further waives all rights to have damages multiplied or increased. All issues and questions concerning the construction, validity, interpretation and enforceability of these Official Rules, or the rights and obligations of entrant and Sponsor in connection with this Sweepstakes, shall be governed by, and construed in accordance with, the laws of the State of Alabama, without giving effect to the conflict of laws rules thereof, and all proceedings shall take place in that State in the City of Birmingham, County of Jefferson."
[4] JCRA notes that "[a]t no time has Johnson ever disputed that she assented to [the] terms [of the MegaSweeps contract]." JCRA's brief at 9. Although Johnson argues that the MegaSweeps contract is "void" because it was founded on a gambling consideration, Johnson does not otherwise dispute the existence of the contract or that she assented to it. Additionally, Johnson does not argue that JCRA cannot meet its burden of demonstrating that the MegaSweeps contract involves interstate commerce.
[5] The dissent argues that "[h]ad the Legislature intended that some provisions of those [gambling] contracts [addressed in § 8-1-150] not be void, it could have said so in clear terms, but its language is all-encompassing and unmistakable." 1 So.3d at 971-72. The dissent continues that "[t]he Legislature has clearly provided that the customer's remedy for losses in an illegal gambling activity is an action in court, not arbitration provided by a clause in a contract that is void ab initio." 1 So.3d at 972. However, whether the arbitration clause in the MegaSweeps contract is severable is not a question of state law, but one of federal law.

In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the Supreme Court of the United States said that "the [Federal Arbitration Act] `create[d] a body of federal substantive law,' which [is] `applicable in state and federal courts.'" (quoting Southland Corp. v. Keating, 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). The Supreme Court noted that it had previously "rejected the view that the question of `severability' was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court." 546 U.S. at 445, 126 S.Ct. 1204. This Court is bound by decisions of the Supreme Court of the United States. See Ex parte Procom Servs., Inc., 884 So.2d 827, 834 (Ala.2003) ("`"This Court may rely on a decision of any federal court, but it is bound by the decisions of the United States Supreme Court."'" (quoting Weems v. Jefferson-Pilot Life Ins. Co., 663 So.2d 905, 913 (Ala.1995), quoting in turn Ex parte Gurganus, 603 So.2d 903, 908 (Ala.1992))); Ingram v. American Chambers Life Ins. Co., 643 So.2d 575, 577 (Ala.1994) ("Under Article VI of the United States Constitution, we are bound by the decisions of the United States Supreme Court.").
[6] The Paragon decision was released after the parties to this appeal submitted their briefs.
[7] The relevant portion of § 34-14A-14, Ala. Code 1975, provides: "A residential home builder, who does not have the license required, shall not bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into in violation of this chapter."
[8] The dissent argues that Buckeye Check Cashing is distinguishable from this case because in Buckeye Check Cashing a decision had not yet been made as to whether the contract at issue was, in fact, void. See Cardegna v. Buckeye Check Cashing, Inc., 894 So.2d 860, 863 (Fla.2005) ("In the case before us today, however, the underlying contract at issue would be rendered void from the outset if it were determined that the contract indeed violated Florida's usury laws."), rev'd, Buckeye Check Cashing, 546 U.S. at 445-46, 126 S.Ct. 1204.

Justice Parker asserts that in this case "[t]he illegality of the MegaSweeps scheme is. . . not an issue on the table for either an arbitrator or a trial court to decide" because "in Barber ... this Court clearly and unanimously held that the MegaSweeps scheme constitutes illegal gambling." 1 So.3d at 971. This Court in Barber did address "the MegaSweeps scheme" and declared it to be a gambling operation; however, neither this Court, nor the trial court, addressed in that decision what effect the decision would have on the MegaSweeps contract in this case. This case, therefore, is legally indistinguishable from Buckeye Check Cashing. Whether this particular contract is void is a decision for the arbitrator, and not for this Court or for the trial court (or, as suggested by the dissent, for the legislature, whose constitutional mandate is to pass general laws and which is prohibited by the separation-of-powers doctrine from deciding the effect of a statute on particular parties in particular cases). No matter how obvious we might consider the answer to a question, we cannot answer that question with legal effect absent the jurisdiction to do so. Moreover, the question whether the MegaSweeps contract may later be deemed void or merely voidable under state law is not of consequence when deciding whether the arbitration clause in that contract is severable and enforceable. See Buckeye Check Cashing, 546 U.S. at 446, 126 S.Ct. 1204 ("In declining to apply Prima Paint [Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)]'s rule of severability, the Florida Supreme Court relied on the distinction between void and voidable contracts.... Prima Paint makes this conclusion irrelevant. That case rejected application of state severability rules to the arbitration agreement without discussing whether the challenge at issue would have rendered the contract void or voidable."). See also Paragon, 987 So.2d at 568 ("Therefore, the arbitration clause in the contract between Paragon and Boles is enforceable, and it is irrelevant whether Paragon's actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.").
[9] The dissent argues that the MegaSweeps contract is void as a whole under § 8-1-150(a), Ala.Code 1975, because it is founded on gambling consideration and, thus, that "the arbitration clause is just as void as the rest of the contract." 1 So.3d at 971. However, as noted above, no court has made a determination as to the status of the MegaSweeps contract; thus, as the United States Supreme Court noted in Buckeye Check Cashing: "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445-46, 126 S.Ct. 1204.
[10] We recognize that in other cases, this Court has applied a de novo standard of review; however, in those cases, this Court was reviewing a trial court's denial of a party's motion to stay, not reviewing a postjudgment motion in which a party, for the first time, asks the trial court for a stay. See Liberty Nat'l Life Ins. Co. v. Douglas, 826 So.2d 806, 809 (Ala.2002) ("We review de novo a trial court's denial of a motion to stay pending arbitration."); Lee v. YES of Russellville, Inc., 784 So.2d 1022, 1025 (Ala.2000) ("A trial court's denial of a motion to stay proceedings pending arbitration is reviewable by direct appeal.... Our review of that decision is de novo.").
[11] Section 3 of the FAA provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."
9 U.S.C. § 3.
[12] Because we conclude that under Alabama law the trial court exceeded its discretion in denying Johnson a stay pending arbitration, we do not address the applicability of § 3 of the FAA to this case, and whether or when a trial court has discretion under § 3 to dismiss an action instead of granting a stay pending arbitration. See Lloyd v. Hovensa, LLC, 369 F.3d 263, 269 (3d Cir.2004) ("Here, the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."); Choice Hotels, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709 (4th Cir.2001) ("[T]he FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements."); Adair Bus Sales, Inc. v. Blue Bird Corp., 25 F.3d 953, 955 (10th Cir. 1994) ("[T]he Federal Arbitration Act provides the district court `shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.' 9 U.S.C. § 3. Blue Bird did indeed move the district court for a stay pending arbitration. The proper course, therefore, would have been for the district court to grant Defendant's motion and stay the action pending arbitration.").
[13] See also Mostella v. N & N Motors, 840 So.2d 877, 880 (Ala.2002) (abrogation on other grounds recognized in Wolff Motor Co. v. White, 869 So.2d 1129, 1135 n. 7 (Ala.2003)) ("When a trial court enters an order compelling arbitration, a stay of the proceedings in the trial court during the pendency of the arbitration protects the plaintiff from facing the prospect of the expiration of an applicable statute of limitations or from paying another filing fee in the event future legal proceedings become necessary. An order compelling arbitration should not constitute an adjudication on the merits; therefore, a trial court should not dismiss with prejudice a case in which arbitration is ordered.").