SHAW, Justice
(dissenting).
I respectfully dissent. Our caselaw holds that the issue whether the contracts in these cases are void is an issue to be decided by an arbitrator.
The main opinion appears to hold that precedent should not be followed because those cases involved certain facts that needed to be determined by an arbitrator; in the instant case, however,' the Court holds that no determination by an arbitrator is required. As discussed below, the holding of the main opinion fails to follow controlling federal law that this Court has recognized.
In Barber v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala. 2006), this Court determined that a gaming activity called “MegaSweeps,” which was operated by the Jefferson County Racing Association, Inc., d/b/a The Birmingham Race Course (“JCRA”), involved the use of illegal slot machines. In Johnson v. Jefferson County Racing Ass’n, Inc., 1 So.3d 960 (Ala. 2008), Johnson sued JCRA seeking to recover money she had paid to participate in the illegal MegaSweeps game. See Ala. Code 1975, § 8-l-150(a). The “official rules” for participating in MegaSweeps contained an arbitration provision, and JCRA sought to compel Johnson to arbitrate her claims. Johnson argued, however, that JCRA could not establish a “valid contract calling for arbitration” because, she argued, the MegaSweeps contract, which was founded on gambling consideration, was void under Ala. Code 1975, § 8-l-150(a). 1 So.3d at 962. The trial court, relying on Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), held that because Johnson’s challenge was to the Mega-Sweeps contract as a whole, rather than to the arbitration clause in the contract, the issue of the validity of the contract was to be decided by the arbitrator. 1 So.3d at 962-63.
On appeal, Johnson again argued that JCRA could not demonstrate the existence of a contract calling for arbitration because, under Barber, supra, all Mega-Sweeps contracts were void ab initio. Johnson, 1 So.3d at 963. Specifically, she argued that Barber held, as a matter of law, that MegaSweeps constituted illegal gambling under § 8-l-150(a). 1 So.3d at 964. This Court held that Johnson could not avoid arbitration by challenging the validity of the MegaSweeps contract as a *171 whole instead of the arbitration clause itself. Id. In support of this holding, this Court cited Paragon Ltd., Inc. v. Boles, 987 So.2d 561 (Ala. 2007). In that case, the Court noted:
“It is well established that challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court. In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the United States Supreme Court held:
“ ‘Prima Paint [Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) ], and Southland [Corp. v. Keating, 465 U.S. 1 (1984) ], answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision' is severa-ble from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.’ ”
987 So.2d at 567-68 (quoting Buckeye Check Cashing, 546 U.S. at 445-46) (emphasis added).
Johnson argued, however, that there was nothing for the arbitrator to decide as to the validity of the MegaSweeps contract under § 8-l-150(a) that had not already been decided in Barber, which held that MegaSweeps involved illegal gambling consideration. 1 So.3d at 966. This Court noted, however, that the same had been true in Paragon: The defendant in that case had entered into a consent judgment admitting that it had constructed a house without the required license. 1 So.3d at 966. That meant that the defendant could not enforce the contract in that case. 1 So.3d at 964-65. Nevertheless, pursuant to an arbitration clause in the contract, the actual determination whether the contract was void was held to be for the arbitrator to decide, and the arbitration clause was held to be enforceable, even if the contract was later found void. 1 So.3d at 965-66. The same was held to be true for Johnson:
“ ‘[T]he arbitration clause in the [Mega-Sweeps] contract between [JCRA] and [Johnson] is enforceable, and it is irrelevant whether [JCRA]’s actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.’ ”
Johnson, 1 So.3d at 966 (quoting Paragon, 987 So.2d at 568). As to the argument that, under § 8-l-150(a), the MegaSweeps contract was as a whole -void, and the arbitration clause was thus similarly void, this Court stated:
“[N]o court has made a determination as to the status of the MegaSweeps contract; thus,, as the United States Supreme Court noted in Buckeye Check Cashing: ‘[U]nless the challenge is to the arbitration clause itself, the issue of the contract’s validity is considered by the arbitrator in the first instance.’”
Johnson, 1 So.3d at 966 n.9 (quoting Buckeye Check Cashing, 546 U.S. at 445-46).
In the instant cases, the plaintiffs’ arguments that § 8-l-150(a) voids the contracts appear to be aimed at the contracts *172 as a whole.[3] Their- challenges to the arbitration provisions themselves are not premised on § 8-l-I50(a) but on arguments relating to unconscionability. If Johnson and Paragon are followed, the challenges to the contracts as a whole must be decided by an arbitrator.
The main opinion in the instant case states:
“[T]his case does not involve a situation where a court or an arbitrator could subsequently find the ‘contracts’ in ques'tion to be perfectly enforceable. Rather, the entire subject matter of these contracts is illegal conduct. Thus, there are no factual questions to be resolved by an arbitrator or a court before a determination can be made as to whether the contracts in question are void or voidable.” '
226 So.3d at 169.
But as recounted above, the same was true in Paragon and Johnson. The party resisting arbitration in Johnson specifically claimed that, in Barber, all MegaSweeps contracts had been determined to be void ab initio. We stated that “Johnson brought the present action” seeking to recover money she had paid to participate in the MegaSweeps “following this Court’s decision in Barber, ... in which we determined that” MegaSweeps involved the use of illegal slot machines. 1 So.3d at 961. The decisions—Barber and 'Johnson—were issued 18 months apart. There seems to be no dispute that the gambling activity declared illegal in Barber was the exact activity challenged in Johnson. It was deemed irrelevant that all MegaSweeps contracts were assumed to be void: The actual question as to the validity of the contract in Johnson was for the arbitrator to decide. 1 So.3d at 966. The same had been true in Paragon: “[T]he sole question” whether the contract could be enforced “was already answered—Paragon did not have the ‘license required.’” 1 So.3d at 966. There were no factual disputes about the legality of the contracts in *173 either Paragon or Johnson. Under the rationale of the main opinion, it would have been “unconscionable” for a court to enforce those contracts and require an arbitrator to determine whether the contracts were illegal and void. Nevertheless, Paragon and Johnson followed controlling federal caselaw requiring such a result. The posture of the instant case is indistinguishable from the posture of Paragon and Johnson; yet this Court, contrary to controlling federal precedent, undertakes a new analysis and reaches a different result. .
The main opinion assumes that the contracts at issue in the instant cases are illegal and that an arbitrator can make no other conclusion: “[T]here are no factual questions to be resolved by an arbitrator or a court before a determination can be made as to whether the contracts in question are void or voidable.” 226 So.3d at 169. Perhaps these contracts are illegal, but it is unnecessary for this Court, or any court for that matter, to reach such a conclusion. No determination has been made as to whether the electronic-bingo machines used in 2008 and 2009—which are the machines at issue in this case—fail to meet the test for legal bingo found in Barber v. Cornerstone Community Outreach, Inc., 42 So.3d 66 (Ala. 2009), a case released after the underlying events in the instant case. It is true that, seven to eight years after the events leading to the instant lawsuits, electronic-bingo operations at Vietoryland were declared illegal in State v. $223,405.86, 203 So.3d 816 (Ala. 2016). But the electronic-bingo devices in State v. $223,405.86 were seized in an investigation that began on December 20, 2012, “two days after the Casino announced its opening.” Ex parte State of Alabama, 121 So.3d 337, 342 (Ala. 2013). Vietoryland had apparently been closed between the activity underlying the complaints in the instant cases and the investigation leading to State v. $223,405,86, which investigation started three to nearly four years later. In my mind, this Court is putting the cart before the horse by holding ex mero motu that illegal activity that started in 2012 necessitates a finding that activity that occurred years earlier was also illegal, thus rendering those prior contracts void. Again, that may be the case here; however, Johnson and Paragon, both of which, as noted, are based on controlling federal-court precedent, stand for one simple proposition: Whether the contracts in these cases are void is for an arbitrator to determine. I would follow our precedent; therefore, I respectfully dissent.

. The arguments found in the plaintiffs' oppo- ■ sitions to the motions to compel arbitration filed by. Macon County Greyhound Park, Inc., attacked the arbitration provisions as unconscionable. But as to whether they aré void based on illegal gambling consideration, the plaintiffs' arguments appear to be premised on the notion that the entire contracts are void as unenforceable gambling contracts. Under the heading “THE ARBITRATION PROVISION IS VOID BECAUSE THE CONTRACT IS BASED ON AN ILLEGAL GAMBLING CONTRACT UNDER ALA. CODE § S—1—ISO,” the plaintiffs argued:
"Macon County Greyhound Park cannot enforce the arbitration provision because electronic bingo contracts are illegal contracts for gambling activity and are void ab initio. See Ala. Code, § 8—1—[1]50 (providing that all contracts founded in whole or part on a gambling! consideration are void). Macon County Greyhound Park admits these contracts, by which it bases its demands for arbitration, are the same contracts through which Macon County Greyhound Park allowed its members to play electronic bingo.
Macon County Greyhound Park cannot enforce the arbitration provision because electronic bingo are [sic] illegal contracts for gambling activity and are void ab initio. Ala. Code [1975, § 8-1-150]. Macon County Greyhound Park admits these contracts by which it bases its demands for arbitration are the same contracts through which Macon County Greyhound Park allowed its members to play electronic bingo.” •
(Emphasis added.) They further argued:
‘‘[Macon County Greyhound Park] attempts to compel arbitration on a contract which is founded on illegal gambling consideration. The Plaintiff took part in an illegal gambling game in which money was to be paid on the happening of an uncertain even[t]. [Macon County Greyhound Park’s] electronic bingo games constitute an illegal gambling operation under the Alabama Supreme Court decision of Barber v. Cornerstone Community Outreach, Inc., [42 So.3d 65 (Ala. 2009),] and thus any contract made on the basis of this game is void.”
(Emphasis added.)